**Edmund COTE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20312.**

United States Court of Appeals
Ninth Circuit.

March 11, 1966.

---

790

George L. Albright, Christensen, Bell, Morris & Albright, Las Vegas, Nev., for appellant.

John W. Bonner, U. S. Atty., Robt. S. Linnell, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before HAMLEY, HAMLIN and ELY, Circuit Judges.

HAMLIN, Circuit Judge.

Edmund Cote, appellant herein, was tried in the United States District Court for the District of Nevada in a court trial for violating 18 U.S.C. § 2113 (a)—armed bank robbery. He was found guilty by the district judge and on November 15, 1963, was sentenced to a term of imprisonment. No appeal was taken from this judgment. On November 5, 1964, appellant filed in the United States District Court for the District of Nevada a motion pursuant to 28 U.S.C. § 2255. For the hearing of that motion appellant was brought by order of the court from the United States penitentiary at Atlanta, Georgia, where he had been confined pursuant to the sentence, to Las Vegas, Nevada. Counsel was appointed by the court to represent him, and after a pretrial hearing at which appellant and his counsel were present, the motion was set for hearing on May 17, 1965. At the hearing, appellant called as witnesses the attorney who represented him at the time of his trial and two federal agents who interviewed him. The appellant also testified. On May 27, 1965, the district judge made findings of fact, conclusions of law, and a judgment denying appellant's motion. There was a timely appeal by appellant to this court from said denial. This court has jurisdiction under 28 U.S.C. § 1291.

The appellant in his brief specifies the following alleged errors by the district court: (1) "The Court erred in finding that there was no violation of the *McNabb* rule in criminal procedures and there were no confessions or admissions illegally obtained from Appellant"; (2) "The Court erred in finding that Appellant was properly arraigned"; (3) "The Court erred in finding that Appellant was not

denied his right to counsel when interrogated by the FBI while a prisoner in San Diego, California, and while a federal prisoner in Clark County, Nevada after an indictment had been returned against Appellant."

The record discloses that on May 28, 1963, Cote was stopped while driving an automobile in the city of San Diego, California, by the San Diego Police for going "through a red light." While being questioned about his driver's license the officer called his headquarters by radio and was informed that appellant who had given the name of LaCarde was wanted for bank robbery in Las Vegas. Appellant was then brought to the local police station and locked up. That evening appellant was interviewed by two FBI agents. The court found that prior to any statement by appellant he had been advised by these agents of their identity and that he did not have to make a statement and that any statement he did make would be voluntary and of his own free will and could be used against him in a court of law. He was also advised that he had the right to consult an attorney, and that no promises or threats were being made to him to make a statement. Appellant was asked if he was involved in a bank robbery in Las Vegas, Nevada, on April 22, 1963, and he stated that he was not. He stated that he had been in Las Vegas somewhere around that time and that while there he had purchased a .38-caliber revolver, using the name of La-Carde. He gave as reasons for the purchase of the weapon that he had won some money in a gambling establishment in Nevada, that someone tried to get in his room at the hotel in Las Vegas, and that he had purchased the weapon to protect himself against burglars. He further stated that this revolver was now in a suitcase in his room at a hotel in San Diego. He first stated that he had come from Las Vegas to Los Angeles by airplane, but later stated that he now recalled that he had come by Greyhound bus from Las Vegas to Los Angeles and that from Los Angeles he had taken a plane to New Orleans. During the interview appellant signed a consent for a search of his hotel room and his automobile.[1] After he had signed the consent to search, appellant then said that his true name was Edmund Cote, that he was a parole violator from the state of Maine where he had been serving a life sentence for murder. He stated that he had left Maine after his parole and gone to San Francisco without the permission of his parole officer. He at all times denied that he was in any way involved in the bank robbery in Las Vegas.

The following day, May 29, 1963, he was again interviewed by the agents of the FBI in San Diego, at which time, after again being advised of his right to consult an attorney and the fact that he did not have to make any statement, in the same manner as on the previous day, he was asked if he was willing to furnish exemplars of his handwriting and he stated that he would be willing to do so. Exemplars of his handwriting were then obtained.[2] In the interview on May 29th appellant again denied any connection of any kind with the bank robbery in Las Vegas.

On May 29, 1963, in Las Vegas, Nevada, a complaint was issued before the United States Commissioner in Las Vegas charging appellant with having on the 22nd day of April, 1963, committed the crime of bank robbery in Las Vegas in violation of Title 18 section 2113(a) of the United States Code.

A certified copy of this complaint with a warrant of arrest attached thereto was mailed to the United States Marshal at San Diego. On the afternoon of May 31, 1963, and within fifteen minutes after

---

1. The revolver mentioned by appellant was obtained by the agents in this search the following day.

2. At the § 2255 hearing, when asked by the judge if he contended that the handwriting samples were taken from him illegally, appellant replied, "No, I don't think so." Appellant further stated, "They just asked me to write certain words and I wrote them. He asked me if I wanted to give it to him and I says 'I don't see why not. I aint got nothing to hide.' "

the arrival of the above documents, appellant was taken before a United States Commissioner in San Diego and arraigned.

On June 14, 1963, an indictment was returned by the Grand Jury in Las Vegas charging appellant with a violation of Title 18 section 2113(a). On June 17, 1963, the United States District Court in San Diego signed an order for appellant's removal to Las Vegas. On June 28, 1963, he was interviewed by an FBI agent in Las Vegas jail. He was again advised that he did not have to make a statement and that he had a right to an attorney. In this interview appellant denied that he had committed the bank robbery charged against him and generally made the same statement concerning his activities that he had made to the FBI agent on May 28 in San Diego. On July 19, 1963, counsel was appointed to represent appellant.[3]

On November 3, 1963, appellant signed a written waiver of a jury trial with the consent of his lawyer, and after a court trial was found guilty of the charge against him.

■ Regarding appellant's contention that he was denied his right to counsel when questioned by the FBI, the court below held that "in all cases the Defendant effectively and intelligently waived his right to counsel. The Court disbelieves the Defendant's testimony to the effect that he was not told of his right to an attorney. The Court disbelieves the Defendant's testimony that he asked for an attorney when arrested and was told he could not see an attorney until the FBI agents came to see him." The court chose to believe the testimony of the FBI agents that appellant never requested an attorney and that prior to any statement by

appellant he had been advised by these agents of their identity and that he did not have to make a statement, that any statement he did make would be voluntary and of his own free will and could be used against him in a court of law, and that he had the right to consult an attorney. From an examination of the record, we hold that there was ample evidence to support this finding by the district judge, and that such a finding was not clearly erroneous.

Appellant's other contentions of error rest on the Supreme Court's holding in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and Rule 5(a) of the Federal Rules of Criminal Procedure. Rule 5(a) provides:

"Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

In McNabb, supra, the Court held that admissions made by defendants after long and repeated questioning without taking the defendants before a United States Commissioner for arraignment were inadmissible.

The Supreme Court has had occasion to consider the McNabb rule in several cases. In these cases, incriminating statements or confessions were held inadmissible where (1) as in Upshaw v.

---

3. Appellant was also visited in the jail at Las Vegas on three other occasions, but on none of these occasions was there any discussion about the Las Vegas bank robbery charge. (1) On July 15, 1963, in response to a request from appellant, agent Parker went to the Las Vegas jail. Appellant inquired as to whether there was any hold on his automobile. He was told that there was not and had not been any hold order on it. (2) On

August 7, 1963, agent Parker talked to appellant in the jail concerning his possible connection with a bank robbery in Detroit in February, 1963. The record shows no admissions of complicity therein or knowledge thereof by appellant. (3) On August 12, 1963, agent Parker returned to appellant in the Las Vegas jail some personal property that had been taken from appellant, and appellant gave him a receipt therefor.

United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100, they were obtained during a period of detention where the sole purpose of delay in arraignment was to elicit incriminating information from the accused, and (2) as in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479, where without informing defendant of his rights a confession was obtained after a long period of questioning although during said period a magistrate was readily available.

In United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, the Court also reaffirmed the *McNabb* rule, stating at page 67, 64 S.Ct. at page 897, "inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive features in the *McNabb* case which led us to rule that a conviction under such evidence could not stand." However, in *Mitchell* the Court pointed out that the incriminating statements of the defendant were obtained very shortly after the arrest of the defendant and that the subsequent 8-day detention that ensued without arraignment did not prevent the admissibility of his prior statements made shortly after his arrest. The Court stated, at page 70, 64 S.Ct. at page 898, "But in any event, the illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These, we have seen, were not elicited through illegality. Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers." See also *Upshaw*, supra.

■ Appellant Cote asserts that the delay between the time of arrest on Tuesday, May 28, 1963, and the time of his appearance before a committing magistrate on Friday, May 31, 1963, was "unnecessary delay." As has been pointed out above, the only statement of any kind obtained from Cote in this case in San Diego was on Tuesday evening, May 28, and Wednesday, May 29. The record shows that appellant was not interviewed between May 29 and May 31.

The facts in the instant case are entirely different from those in *Mallory*, *McNabb* and *Upshaw*. Moreover, they differ from those in Ginoza v. United States, 279 F.2d 616 (9th Cir. 1960) and Morales v. United States, 344 F.2d 846 (9th Cir. 1965) wherein incriminating statements were made to federal officers while the prisoners were in federal custody and wherein there appeared no reason for the delays, albeit short, in producing the prisoners for arraignment. Here, the appellant, within fifteen minutes from the time when he was taken into custody by federal officers, was produced by the federal officers for arraignment before a United States Commissioner. In Muldrow v. United States, 281 F.2d 903 (9th Cir. 1960), our court stated that the time of the prisoner's detention by state officers " * * * should not be ignored entirely, nor can it be considered as federal custody. We think it should be taken into account in determining the reasonableness in delay that did ensue after the federal officer took custody." 281 F.2d at 905. The court below held that there was no unnecessary delay, and pointed out that the complaint against appellant was not sworn to in Las Vegas, Nevada, until May 29, 1963, and that "it would have probably been virtually impossible for the federal officers to have arraigned the defendant in San Diego, California, before the United States Commissioner much before the 31st day of May, the date of arraignment." We agree with the conclusion of the court below. Cote was arrested in San Diego, California, and the federal offense was committed in Las Vegas, Nevada. A delay which might be unnecessary when arrest is near the scene of the offense may not be unnecessary when the arrest is made some distance from the offense. The record amply supports the conclusion that the delay through May 29 was not unnecessary but was necessitated by the distance between the point of arrest and the place of the offense. Nor is there any evidence in the record to indicate the

primary purpose in detaining the appellant was to allow federal officers to interrogate him.

The questioning of an accused in custody by federal agents does not of itself render his detention unlawful either under *McNabb* or Rule 5(a). A detention is unlawful when the federal officers cannot justify their failure to promptly bring the accused before a committing magistrate, or when the federal officers delay arraignment in order to obtain evidence from the accused.

An examination of the entire record here convinces us that the judgment of the district court should be affirmed, and it is so ordered.[4]

---

4. The record of appellant's trial in which he was convicted is not before us in this case to establish what, if any, incriminating evidence obtained from appellant during his detention in San Diego was admitted. Assuming, however, that such evidence was admitted, we see no error in view of the finding of the court below and our holding here.