UNITED STATES of America,
Appellant,

v.

William Darrell HALBERT, Appellee
(two cases).

Nos. 25704, 25761.

United States Court of Appeals,
Ninth Circuit.

Dec. 7, 1970.

tory appeal under 18 U.S.C. § 3731. The major question presented is the proper construction of 18 U.S.C. § 3501, from Title II of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351, 90th Congress, June 19, 1968, 82 Stat. 197, on which, as yet, there is little case law. We reverse.

■ After the United States filed its appeal, Halbert filed a notice of appeal, purporting to be a cross appeal, # 25,761. There is no statutory or case authority for such appeal. Halbert's appeal is dismissed as improperly taken. However, we may properly consider, under the appeal by the United States, Halbert's contention on his purported appeal, viz., whether there was given a proper warning under Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

## THE FACTS

Halbert was indicted under the Dyer Act, 18 U.S.C.A. § 2312, for transporting a stolen car from Los Angeles, California to San Simon, Arizona. In the afternoon of Tuesday, November 11, 1969, Halbert was arrested by state officers with three other persons at San Simon, Arizona on the state charge of Grand Theft Auto. The four arrestees were transported to Bowie, Arizona, booked, and placed in jail.

On Wednesday, November 12, 1969, between 8:00 and 9:00 A.M., Special Agent Bagley of the Federal Bureau of Investigation received a telephone call from the Deputy Sheriff of Cochise County, at Bowie, Arizona, informing him of the arrests and possible Dyer Act violations. Agent Bagley then sent a teletype to California to determine whether the vehicle in which the four arrested persons were riding had been reported as stolen. He received a report later in the day that it had been.

On Thursday, November 13, Agent Bagley travelled to the Cochise County Jail in Bisbee, Arizona to interview the

Ann Bowen (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellant.

Philip Fahringer (argued), of Calborne & Severyn, Tucson, Ariz., for appellee.

Before DUNIWAY and CARTER, Circuit Judges, and SWEIGERT,* District Judge.

JAMES M. CARTER, Circuit Judge.

The district court granted Halbert's motion to suppress a confession to an FBI agent, relying on 18 U.S.C. § 3501 (c). The government took an interlocu-

---

* Honorable William T. Sweigert, United States District Judge, Northern District of California, sitting by designation.

four arrested persons, who had been transported there. During the interview, which began about 3:00 P.M. and lasted approximately 26 minutes, Halbert made the confession that the district court suppressed. The interviews with the other three suspects were completed shortly after 5:00 P.M.

On November 13, no complaint for a federal violation had been filed. The United States Attorney had requested that a determination be made as to whether the local officials in Los Angeles County, California, where the vehicle had been stolen, would prosecute. Agent Bagley had teletyped Los Angeles to make the determination. On his return from the Bisbee interview on November 13, he learned that the local authorities would not prosecute the arrested persons.

On Friday, November 14, Agent Bagley was assigned other nonroutine duties in Tucson and did nothing further on Halbert's case. On Saturday and Sunday, November 15 and 16, the United States Attorney's office was not open for business, and Agent Bagley did nothing further on Halbert's case.

 On Monday, November 17, Agent Bagley sought and obtained a complaint from the United States Attorney in Tucson. The complaint was filed before the United States Commissioner in Tucson, and a warrant was obtained for Halbert's arrest.[1] Agent Bagley placed Halbert under arrest in Bisbee at 3:15 P.M. and took him to Douglas where the appearance of Halbert before the United States Commissioner was made at 4:42 P.M. This appearance occurred four days after the interview with Agent Bagley and six days after Halbert was arrested by state authorities.

---

[1]. The memorandum opinion of the trial judge demonstrates a misapprehension of the basic procedures for the institution of criminal proceedings in the federal courts. Briefly they are as follows:

The federal officer, including the FBI agent, may interrogate a defendant before or after a federal criminal proceeding has been instituted. Most often the interrogation takes place beforehand. A federal officer must present the case to the United States Attorney to obtain a decision to prosecute the case or a declination by the United States Attorney of a prosecution. If the United States Attorney authorizes a prosecution, the agent is then authorized to swear to a complaint, file it before the commissioner, and secure a warrant for arrest, and arraign the defendant. The federal officer has no obligation or duty to advise state officers to hold arraignments or hearings.

When we inspect the memorandum opinion we note that it states, "By late Thursday defendant had confessed. On Friday, the FBI agent in charge was assigned to another matter until 5 P.M. At that time he made no effort to communicate with the state authorities to see that the defendant was given an immediate committing hearing."

Again on the second page of the memorandum opinion, the trial court says, "By late Wednesday, the car was known to have been stolen and sufficient facts existed to justify defendant's formal arrest and a committing hearing for viola-tion of the Dyer Act. Instead, most of the next day was taken up with interrogation of the three persons involved in this episode leading to the defendant's confession. And even as late as 5 P.M. of Thursday, when this defendant's confession had been obtained, no move was made to hold a committing hearing. True, the nearest magistrate was thirty miles distant in Douglas, but he could have been telephoned and the defendant transported there late that day for a hearing, or, if that failed taken before a local judge, justice of the peace or the mayor of Bisbee."

It is apparent that the trial judge thought that once the confession was obtained the FBI agent could take the defendant before a committing magistrate for a hearing. This is not the law nor the way the procedure works, and no committing hearing could have been held on the federal side until first, the FBI agent

(1) reported a summary of his case to the United States Attorney;

(2) obtained the decision of the United States Attorney that the United States would prosecute, thereby authorizing the FBI to file a formal complaint;

(3) filed the formal complaint with a commissioner and secured a warrant for arrest.

We think that the trial court's misapprehension of the applicable procedure on the federal side led him into error in his final conclusion on the case.

Thus in summary, we have a case where a confession was obtained by an FBI agent, from a state prisoner, within 48 hours of the state arrest. Four days later a federal charge was filed, and the defendant arrested and arraigned by federal officers.

Halbert moved to suppress the confession given in the interview on November 13 with Agent Bagley on the grounds that it was obtained in violation of (1) the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), (2) Rule 5 of the Federal Rules of Criminal Procedure and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and (3) 18 U.S.C. § 3501.

The district court granted the motion. The district court found (1) that a proper *Miranda* warning had been given, (2) that the confession was voluntary under 18 U.S.C. § 3501(b), but (3) that the delay between the *state* arrest and the confession and delay in holding a committing hearing was not reasonable under 18 U.S.C. § 3501(c). The precise finding on the latter issue was:

"Not only was this confession not obtained within six hours of the arrest or detention, but the delay in holding defendant's committing hearing cannot be excused in the light of 'the means of transportation and the distance to be traveled to the nearest such available magistrate or other officer.' "

## I.

*The confession was voluntary, there was no collusive working agreement between State and Federal officers and the Miranda warning was given.*

If the district court had not relied on 18 U.S.C. § 3501(c) discussed hereafter, the case would present no difficulty. Halbert's counsel conceded during the motion to suppress, that federal agents

"are not to be affected by any illegality that's done or any failure by State people to take persons in custody before the city magistrate unless there's a working arrangement or some sort of understanding between the Federal and State authorities."

Other circuits have held that the period of state custody need not be taken into account unless there is "a collusive working agreement" between state and federal authorities for the purpose of delay in order to obtain an admission on confession. United States v. Chadwick, (10 Cir. 1969), 415 F.2d 167, states,

"Courts have, however, generally recognized an exception to the applicability of Rule 5(a) to arrested persons in state custody for the simple reason that such persons cannot be conveniently arraigned while in state custody * * * Interviews of persons in state custody by federal officers have been permitted and extrajudicial statements made during such interviews have been generally held admissible, provided, of course, they are otherwise constitutionally admissible * * * and provided also that the interviews and resulting confessions are not in pursuance of a collusive 'working arrangement' * * * between state and federal officers whereby the salutary purposes of Rule 5 are subtly circumvented." [415 F.2d at 170.]

See Anderson v. United States (1943), 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829; Butterwood v. United States (10 Cir. 1966), 365 F.2d 380, cert. den. 386 U.S. 937, 87 S.Ct. 960, 17 L.Ed.2d 810; United States v. Coppola (2 Cir. 1960), 281 F.2d 340, aff'd per curiam 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79 (1961); Barnett v. United States (5 Cir. 1967), 384 F.2d 848; United States v. Hindmarsh (6 Cir. 1968), 389 F.2d 137, cert. den. 393 U.S. 866, 89 S.Ct. 150, 21 L.Ed.2d 134.[2]

2. United States v. Campbell (9 Cir. 1970) 431 F.2d 97, a late case from this circuit is factually similar to our case and at least persuasive. Campbell was arrested July 3, 1969 by state officers. An FBI agent, prior to any federal charges being filed, interviewed Campbell on July 4, 1969, some 22 hours after his

Our Circuit in Cote v. United States (9 Cir. 1966), 357 F.2d 789, cert. denied 385 U.S. 883, 87 S.Ct. 173, 17 L.Ed.2d 110 (1966), reviewed the holdings of McNabb v. United States (1943), 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Upshaw v. United States (1948), 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 and Mallory v. United States (1957), 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, and stated,

"In *McNabb*, * * * the Court held that admissions made by defendants after long and repeated questioning without taking the defendants before a United States Commissioner for arraignment were inadmissible.

" * * * [I]n *Upshaw v. United States*, * * * [the admissions] were obtained during a period of detention where the sole purpose of delay in arraignment was to elicit incriminating information from the accused, and * * * in *Mallory v. United States*, * * * where without informing defendant of his rights a confession was obtained after a long period of questioning although during said period a magistrate was readily available." [357 F.2d at 792–793.]

■ Our Circuit has held that the period of state custody can be considered in determining whether the confession or admission was voluntary. Smith v. United States (9 Cir. 1968), 390 F.2d 401 and Little v. United States (9 Cir. 1969), 417 F.2d 912. However, as stated in Smith, *supra*, "The determining factor is not the amount of time elapsing between arrest and confession, but rather the nature of police activities during

state arrest and secured a confession. Campbell was indicted by a federal grand jury, but not arrested and arraigned on a federal charge until July 18, 1969, 15 days after his state arrest and 14 days after his confession to the FBI agent.

In the instant case the facts show the state arrest occurred in the "afternoon or late afternoon" on November 11, 1969. His confession to an FBI agent was concluded by 3:26 P.M. on November 13, 1969, about 48 hours later. He was arrested on a federal warrant and arraign-

this period." [390 F.2d at 403.] *Cote, supra,* states "Nor is there any evidence in the record to indicate the primary purpose in detaining the appellant was to allow federal officers to interrogate him." [357 F.2d at 793–794.]

■ The appellant produced no evidence of any collusive working agreement or that his confession resulted from any delay occurring after his arrest and prior to his appearance before the U. S. Commissioner, and produced no evidence to rebut the government's showing that the delay was reasonable and necessary. The burden of proving a violation of Rule 5(a), Fed.Rules Crim.Procedure is on the defendant. Little v. United States, *supra,* 417 F.2d at 914.

■ In his purported appeal, # 25,-761, Halbert attempted to raise as his sole assignment of error in the district court's findings, that *Miranda* warnings were improperly given. Since the issue on the government's appeal is whether the court's findings and decision were correct, Halbert may raise this question under the appeal by the government. Not only were the oral statements by the FBI agent to Halbert sufficient under *Miranda,* but the appellee read and signed Exhibit 1, a full and complete statement of his *Miranda* rights. The contention is frivolous.

We conclude that the confession was admissible, subject to the effect of 18 U.S.C. § 3501(c) which we discuss in Part II.

■ The law we cited above was good law, certainly until the enactment of § 3501 on June 19th, 1968. As seen by the legislative history which we cite

ed on November 17, 1969, 6 days after his arrest.

The court did not reach appellant's contentions that the confession was in violation of Rule 5(a) Fed.R.Crim.Proc., and 18 U.S.C. § 3501, since the contentions were not raised below. However, the court observed "that appellant's argument does not seem well taken in the circumstances of this case. See United States v. Chadwick, 415 F.2d 167 (10 Cir. 1969)." We cite and quote from *Chadwick, supra.*

in Part II of this opinion, it is obvious that the prime purpose of Congress in the enactment of § 3501 was to ameliorate the effect of the decision in Mallory v. United States (1957), 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, to remove delay alone as a cause for rejecting admission into evidence of a confession and to make the voluntary character of the confession, the real test of its admissibility.

Certainly § 3501 was not intended to make the law more restrictive than the law prior to the enactment of 18 U.S.C. § 3501. We think the law above cited is still good law and not inconsistent with 18 U.S.C. § 3501. It can be argued that § 3501 removed the necessity of considering "collusive working · agreements." We do not reach that question, but certainly under § 3501 the trial court would have full range to explore the issue of the voluntariness of the confession.

## II.

*Construction of 18 U.S.C.A. § 3501.*

18 U.S.C.A. § 3501 reads:

"§ 3501. Admissibility of confessions

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the dis-

**1232**

tance to be traveled to the nearest available such magistrate or other officer.

(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

(e) As used in this section, the term 'confession' means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing." Added Pub.L. 90–351, Title II, § 701(a), June 19, 1968, 82 Stat. 210, and amended Pub.L. 90–578, Title III, § 301(a) (3), Oct. 17, 1968, 82 Stat. 1115.

We hold that the district court's construction of subsection 3501(c) was in error. We reach this conclusion on the basis of our analysis of the language of subsection 3501(c), the statutory scheme of section 3501, and the legislative history. As noted above, there is little case law on the problem.[3]

We note that § 3501(c) uses the words "detention in the custody of any law-enforcement officer or law enforcement agency." In view of our holding integrating § 3501(c) into an interpretation of the entire section, we assume for decision that· the quoted words include both *State* and federal custody.[4]

Subsection 3501(c) explicitly provides that confessions shall not be inadmissible solely because of delay in arraignment if they are voluntary and either made within six hours of arrest or made during a delay in arraignment that is reasonable considering transportation problems in getting the defendant before the magistrate. Thus, on its face subsection 3501(c) provides only that *some confessions shall be admitted. It does not explicitly provide that all other confessions shall not be admissible.* The question is whether such an exclusionary provision

3. Two cases have discussed in general terms, Section 3501, Title 18 U.S.C. Reinke v. United States (9 Cir. 1968) 405 F.2d 228, states:

"We do not reach the question of the constitutionality of section 701 of Title II of the Crime Control Act of 1968. The thrust of that section is to make voluntariness the sole criterion of the admissibility of a confession, using a 'totality of the circumstances' test to determine the issue of voluntariness. However, the trial in this case had already been completed when this statute was passed, and the Government in its brief concedes that the statute should have prospective application only. Furthermore, here the appellant was given the *Miranda* warnings, so the Government need not rely on the more relaxed procedures of section 701. Therefore, section 701 is wholly inapplicable to the case at bar." [p. 230]; United States v. White (2 Cir. 1969) 417 F.2d 89, states:

"Aside from the Miranda-based decisions, appellant asserts the novel proposition that the government's right to introduce evidence obtained from Francis is even more narrowly circumscribed by the requirements for voluntariness of 'confessions' under 18

U.S.C. § 3501. That section lists five factors which a Judge should consider in his determination of voluntariness before submission of the evidence to the jury. From this appellant argues that disclosures and evidence sufficiently voluntary to be admissible under *Miranda* nevertheless may be involuntary as a matter of law under the Omnibus Crime Control and Safe Streets Act of 1968.

▪ That contention does not require extended discussion. It is sufficient to note that neither the language of § 3501 nor its legislative history indicate that Congress intended to expand the protection of potential criminal defendants beyond the scope of protection established by the *Miranda* line of cases." [pp. 91–92].

4. The argument can be made that "arrest" or "detention" as used in subsection 3501 (c), refers only to arrests or detentions by federal officers and that therefore, since Halbert confessed on November 13 while in state custody and was promptly arraigned after his arrest by federal officers, no problem is presented by subsection 3501(c). We do not reach the question.

should be implied, as was done by the district court.[5]

■ An analysis of the scheme of section 3501 and its legislative history convinces us that such exclusion of confessions should not be implied. Subsection 3501(a) provides that "a confession * * shall be admissible in evidence if it is voluntarily given." Subsection 3501(b) provides that "the trial judge in deter-

5. We can find no case that has passed on or even discussed the question. Of the writers that have discussed subsection 3501(c) only two have recognized the element of ambiguity in it. Professor Wright is one of them. He states:

"On its face the statute is clear enough. In the absence of some other indication of involuntariness, a confession obtained within six hours immediately following arrest is admissible and a confession obtained after a delay of more than six hours may be admitted if the delay is found reasonable in light of the time and distance required to take the defendant before the nearest available magistrate or other officer.[41]

[41]. Six hours normal limit. On its face this is more restrictive than the construction lower courts have often given the McNabb-Mallory rule. Delays of far longer than six hours have frequently been held proper, for reasons other than problems of transportation to the nearest magistrate. * * * In such a case § 3501(c) would not make the confession admissible *but that subsection does not say that a longer delay automatically makes the confession inadmissible,* and the construction is possible that a court might still find the confession to be voluntary under § 3501(b) and thus admit it under § 3501(a)." 1 Wright, Federal Practice and Procedure § 72, p. 74.

[Emphasis supplied]

"The 1968 legislation * * * provides that a confession made within six hours immediately following the defendant's arrest or other detention is admissible, and a greater time is permissible if it is found to be reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate or other officer. Delay in excess of these limits *is a factor in determining the voluntariness of the confession.*" 1 Wright, Federal Practice and Procedure § 74, p. 89.

There is one other writer who has recognized the problem in a note:

"The intention of Congress regarding the meaning of the six-hour provision is not clear. The qualification of the

436 F.2d—78

six-hour provision for necessary travel seemingly permits the admission of a confession elicited more than six hours after arrest if a greater period of time were needed for travel and if the confession was elicited during that period. Congress, however, does not specify whether the six hour rule applies to confessions elicited more than six hours after arrest but at a time when a commissioner is not available, in the middle of the night for example. The *McNabb-Mallory* rule applied only to confessions obtained during periods of unnecessary delay and, accordingly, night hours and weekends were not considered periods of unnecessary delay. * * * *If the six-hour rule is to apply to these periods of necessary delay, which seems to be the case from a simple reading of the statute, Title II becomes more of a burden on the police than the Mc-Nabb-Mallory rule because they would have only six hours, and not all night or all weekend to interrogate. This is contrary, however, to the basic motive of Congress in enacting Title II to free law enforcement of the restrictions imposed by the Supreme Court. The actual meaning of the six-hour provision will have to be determined in the courts."*

[Emphasis supplied]

Note: Survey of Title II: Omnibus Crime Control and Safe Streets Act of 1968, 18 Am.L.Rev. 157, 173 (1968).

The other writers on subsection 3501 (c) have assumed, without discussion, that the statute automatically excludes confessions given more than six hours after arrest unless the delay in arraignment is excusable. Comment, Police Interrogation of Suspects: The Court Versus the Congress. 57 Cal.L.Rev. 740, 751 (1969); Title II of the Omnibus Crime Control Act: A Study in Constitutional Conflict. 57 Geo.L.J. 438, 451 (1968); Comment, Title II of the Omnibus Crime Control and Safe Streets Act of 1968 As It Affects The Admissibility of Confessions and Eyewitness Testimony. 40 Miss.L.J. 257, 279–80 (1969); Comment, Title II of the Omnibus Crime Bill: A Study of the Interaction of Law and Politics. 48 Neb.L. Rev. 193, 195–6 and 199–200 (1968).

mining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment. * * * " It further provides that the presence or absence of delay in arraignment "need not be conclusive on the issue of voluntariness of the confession." Thus, subsection 3501 (b) instructs the trial judge to consider delay in arraignment in determining the voluntariness of a confession but leaves him with a great deal of discretion on what to make of it. In this context, subsection 3501(c), in providing that confessions shall not be inadmissible solely because of delay in arraignment, if otherwise voluntary and given within six hours of arrest, merely removes some of the discretion given to the trial judge under subsection 3501(b) in determining voluntariness. Discretion remains in the trial judge, under subsection 3501(b), to exclude confessions as involuntary solely because of delay in arraignment, during which a confession is given, that exceeds six hours.

This construction is consistent with the language of section 3501 and a scheme under which the admissibility of confessions turns on voluntariness. The integration, however, is not perfect. The effect of the proviso of subsection 3501 (c) is to remove discretion from the trial judge by requiring him to admit a confession, otherwise voluntary, given more than six hours of arrest during a delay in arraignment if the delay was reasonable considering problems in transporting the defendant to the magistrate.

One must conclude then that subsection 3501(c) was intended to make voluntary confessions within six hours after arrest, clearly admissible without reference to delay. The provision as to confessions made more than six hours after arrest pinpointed an excuse for delay, caused by transportation and distance difficulties. After the express statements in § 3501(a) that the confession "shall be admissible in evidence if voluntarily given," and the statement in subsection 3501(b) that in determining the voluntariness the court shall take into account "the time elapsing between arrest and arraignment of the defendant making confession, if it was made after arrest and before arraignment," we cannot say that Congress intended by the provision in subsection 3501(c) to undo all it had done with the preceding subsections. The legislative history which we review hereafter clearly confirms our view, and we think it would be error to reach a different interpretation.

Our conclusion on the proper construction of subsection 3501(c) is strongly supported by the legislative history. Section 3501 is the codification of Pub.L. 90-351, Title II, Section 701(a), June 19, 1968, 82 Stat. 210. A House bill was passed in lieu of the Senate bill after substituting for its language the text of the Senate bill. The Senate Report No. 1097, 1968 Code Cong. and Adm. News, p. 2112, is replete with language consistent with our construction of subsection 3501(c) in that it reflects the opinion that the admissibility of confessions should turn on voluntariness rather than whether the police conformed to established norms for their behavior. We quote only the language that bears most directly on the meaning of subsection 3501(c). Additional legislative history is set forth in the margin.[6] The major-

---

6. *Additional Legislative History* (From Senate Report No. 1097)
"TITLE II—ADMISSIBILITY OF CONFESSIONS, * * *
"Federal aid to the States is not enough to successfully combat the menace of crime. Much more is necessary. No matter how much money is spent for upgrading police departments, for modern equipment, for research and other purposes encompassed in title I, crime will not be effectively abated so long as criminals who have voluntarily confessed their crimes are released on mere technicalities. The traditional right of the people to have their prosecuting attorneys place in evidence before juries the voluntary confessions

and incriminating statements made by defendants simply must be restored. It is the purpose of Title II to accomplish this and other related objectives." 1968 U.S.Code Cong. and Admin.News, p. 2123.

\* \* \* \* \*

"Voluntary confessions have been admissible in evidence since the early days of our Republic. These inculpatory statements have long been recognized as strong and convincing evidence— often called the best evidence of guilt. In Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the U. S. Supreme Court declared inadmissible voluntary confessions made during a period of unnecessary delay between the time of arrest and the time the suspect is taken before a committing magistrate. The case of Alston v. United States, 121 U.S. App.D.C. 66, 348 F.2d 72 (1965), is indicative of the illogical and unrealistic court decisions resulting from the application of the *Mallory* rule \* \* \*. The rigid, mechanical exclusion of an otherwise voluntary and competent confession is a very high price to pay for a 'constable's blunder.'

"Enactment of subsections 3501 and 3502 of section 701 is needed to offset the harmful effects of the *Mallory* case. Senator Alan Bible, chairman of the Senate Committee on the District of Columbia, was especially critical and dismayed by the effect of that case on the crime rate in Washington, D. C. Senator Bible explained that the decision in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) was one of several factors influencing the increased crime rate in Washington, D. C. \* \* \*. It is his view that the *Mallory* decision contributed to these disturbing statistics. He continued:

'These statistics clearly point out, it seems to me, that something is drastically wrong with our system of criminal justice \* \* \*.

'It seems to me we have become obsessed with uncovering new rights and safeguards for the criminal to such a degree that we have unbalanced the scales of justice, and find ourselves in the unenviable position of losing control of the crime and violence that are running rampant in our cities, \* \* \* I think it is significant to note that the President's Commission on Crime in the District of Columbia, in its report dated December 15, 1966, also supported a

change in post-arrest procedures, in order to afford the police officers the opportunity to question suspects. \* \* \* (hearings, pp. 132–133)' "

"Judge Holtzoff was equally critical of *Mallory* and its harmful effects \* \* \*.

\* \* \* \* \*

'The question of guilt or innocence becomes relegated to the background, because in many of these instances guilt isn't seriously in dispute. The only matters that are tried nowadays are these side issues. And I must say that sometimes I feel, when I am trying a criminal case, as though I am in a topsy-turvy world—I am not trying the accused, I am trying the policeman—did he break any rule?

'In view of these considerations and in the interest of public safety and law enforcement, legislation such as is embodied in S.674 is highly desirable and I hope that it will be enacted (hearings, p. 261).' " 1968 U.S.Code Cong. and Admin.News, pp. 2124– 2125.

The legislative history includes the individual views of Senators Dirksen, Hruska, Scott and Thurmond who supported the passage of Title II.

\* \* \* \* \*

"The exclusion of voluntary confessions, including admissions against interest, is perhaps the most significant problem in obtaining criminal convictions. Members of the Subcommittee on Criminal Law and Procedure have heard scores of respected and competent witnesses testify that such exclusion has seriously crippled law enforcement. Not only is the actual confession rendered useless but any 'lead' or 'clue' to other independent evidence provided by the confession is so 'tainted' that it is inadmissible and therefore useless. District attorneys and State Attorneys General from cities and states that are in serious trouble in the war on rising lawlessness, shocked the sensibilities of many of us on the Committee with reports of the ever-increasing numbers of criminals who are patently guilty and who walk out of courtrooms because the principal evidence against them was ruled inadmissible. This result was attributed to the rigid and technical application of exclusionary rules laid down by appellate courts. Distinguished judges, appellate and trial, voiced similar concern in urging Congressional action. Our hearing record is replete with such pleas for help. In our own self-defense, this destructive trend must be reversed. Are we to sit idly by while, through the operation of a legal technicality, innocent people are ravaged by self-confessed ma-

ity of Senate Judiciary Committee reported, (Senate Report No. 1097, U.S. Code Cong. and Adm.News):

"Section 701 [3501] * * * provides that a voluntary confession is admissible in evidence in any Federal criminal prosecution. The section lists the factors and circumstances the trial judge is to consider in deciding whether the confession is voluntary. * * * The section also assures that confessions made while the suspect is under arrest shall not be inadmissible solely because of delay in bringing the defendant before a magistrate or commissioner, * * *. Id. p. 2123

Enactment of the provisions of subsection 3501 and 3502 would assign proper weight to the *Mallory* rule. Delay in bringing a suspect before a committing magistrate would be a factor to consider in determining the issue of voluntariness, but it would not be the sole criterion to be considered—operating to automatically exclude an otherwise competent confession." Id. p. 2127

"Subsection (a) of section 3501 provides that a voluntary confession is admissible in evidence in any criminal prosecution brought by the United States or the District of Columbia.

Subsection (b) lists the factors and circumstances that the trial judge is to consider in deciding whether the confession is voluntary.

Subsection (c) provides that a confession made while under detention shall not be inadmissible solely because of delay in bringing the defendant before a magistrate or commissioner." Id. p. 2176

Senators Dirksen, Hruska, Scott and Thurmond, members of the majority of the Senate Judiciary Committee, expressing individual views, said:

"This title would restore the test for the admissibility of confessions in criminal cases to that time-tested and well-founded standard of voluntariness. It would avoid the inflexible rule of excluding such statements *solely* on technical grounds such as delay * *." Id. p. 2282.

Several members of the Senate Judiciary Committee expressed the following minority view on 3501(c):

"Section 3501(c) will inevitably encourage prolonged and indefinite incarceration and interrogation of suspects, without opportunity to consult with friends, family, or counsel. Unlike the recently enacted District of Columbia Crime Act, section 3501(c) fails to provide any time limit whatsoever on the period during which interrogation may take place. The District of Columbia Crime Act provides a maximum 3-hour period for interrogation after which a person may be released without charge and without an arrest record." Id. p. 2216,

---

rauders? Is society to render itself incapable of self-protection? Should it be as the famed jurist, Benjamin Cardozo, once asked, that 'the criminal is to go free because the constable has blundered?'

"The provisions of Title II attempt to right the imbalance in the scales of justice. We have agonizingly weighed the rights and equities of the individual against those of society. We have tried to the best of our consciences to strike the balance true.

"This title would restore the test for the admissibility of confessions in criminal cases to that time-tested and well-founded standard of voluntariness. It

would avoid the inflexible rule of excluding such statements *solely* on technical grounds such as delay or failure to warn the accused as to his rights to silence or to counsel. We have not nullified, however, the rights of defendants to the safeguards of federal law or the Constitution. On the contrary, we have provided a more reasonable rule in that the judge shall consider all the defendant's rights (speedy arraignment, silence, counsel, knowledge of offense charged) and their possible violation in deciding as to the voluntariness of the confession and thus its admissibility." *1968 Code Cong. and Adm.News,* p. 2282.

This indicates that the minority of the committee that proposed the legislation did not think that confessions given more than six hours after arrest would be automatically inadmissible under the bill.

■ We conclude that confessions given more than six hours after arrest during a delay in arraignment are admissible if voluntary, although the trial judge under subsection 3501(b) may take into account delay in arraignment in his determination of voluntariness. The district court here found Halbert's confession voluntary under subsection 3501(b). This conclusion of the district court was correct. The confession was given two days after Halbert's arrest and he was, as discussed above, given the *Miranda* warnings. There was no evidence that he was subjected to oppressive police practices prior to his confession or that the delay between arrest and confession contributed in any way to the confession.

■ The delay *after* the confession and before his federal arraignment obviously had no effect on the prior confession and would not render it inadmissible. United States v. Mitchell (1944), 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, United States v. Campbell (9 Cir. 1970), 431 F.2d 97, note 2.

The order suppressing the confession is reversed, and the case is remanded to the district court.