UNITED STATES of America, Plaintiff–Appellee,

v.

**Lavon WILSON, Defendant–Appellant.**

No. 86–1390.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 1987.

Decided Feb. 11, 1988.

Thomas M. Hoidal, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Karen L. Kothe, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before GOODWIN and FLETCHER, Circuit Judges, and KING,* District Judge.

GOODWIN, Circuit Judge:

Lavon Wilson appeals a conviction following a conditional plea of guilty (pursuant to Fed.R.Crim.P. 11(a)(2)) to second-degree murder on an Indian reservation in violation of 18 U.S.C. §§ 1111 and 1153 (1982). Wilson entered his plea on the condition that he retain his right to appeal the district court's denial of his motion to suppress statements made by him to law enforcement officials. Wilson now seeks reversal on the ground reserved.

On the afternoon of May 9, 1985, the Navajo Police Department received a call regarding an unconscious child at the Public Health Service Hospital. At about 4:30 p.m., Officer Thompson was dispatched to the hospital and was joined shortly thereafter by Sgt. Hawkins and Officer Anderson.

The child, Melvin Wilson, was unconscious. His condition was critical. The officers interviewed the child's mother, Elta Yazzie, who told them that her common law husband, Lavon Wilson, had spanked the child with a shoe. She told the officers that Lavon was at home.

Following federal guidelines requiring Indian Police departments to notify the FBI about any homicides or serious assaults, Sgt. Hawkins immediately contacted Agents Babcock and Coffman in the Gallup, New Mexico, FBI office. Agent Babcock told Hawkins to get a written statement from the mother and to keep the FBI informed.

---

* Honorable Samuel P. King, United States District Judge, District of Hawaii, sitting by designation.

The officers went to Lavon Wilson's home, bringing Elta Yazzie with them. Wilson opened the door and, at Sgt. Hawkins' request, stepped outside. Hawkins read Wilson his *Miranda* warnings. Officers Thompson and Anderson then questioned Wilson. He denied abusing his child other than spanking him with the child's shoes. As an explanation for the child's injuries, Wilson stated that the child had fallen off the porch and that the child bruised easily. Officer Anderson found Wilson's story unbelievable and arrested him on the tribal charge of aggravated battery. The arrest took place at approximately 7:55 p.m.

Wilson was taken to the tribal jail in Window Rock, Arizona, and placed in solitary confinement. Special security precautions were taken to monitor him frequently while in custody.

At approximately 8:00 a.m. the next morning, Sgt. Hawkins again contacted Agents Babcock and Coffman, and advised them that Wilson had been arrested. The child had been moved to a hospital in Albuquerque and was thought to be brain dead. Sgt. Hawkins told them that Wilson would be in the tribal jail if they wanted to interview him.

Later that morning, Agents Babcock and Coffman came to the tribal jail. Elta Yazzie was there with some of her family. The agents went with her to Wilson's home and with her consent conducted a search. Between 1:00 and 1:30 p.m., the agents returned to the jail to question Lavon Wilson.

Sgt. Hawkins told the agents that Wilson was to be arraigned on the tribal charge that day. He told them that if the court began taking arraignments during their interview, he would make arrangements to take Wilson before the judge himself after the agents had finished the interview. Sgt. Hawkins provided the FBI agents with a room in the jail for the questioning. The room was windowless but had a half door, with the top portion open.

Agents Babcock and Coffman spoke with Wilson for more than two hours. Preliminary questioning revealed that Wilson had only a seventh grade education and had been arrested only on tribal or drinking offenses. Agent Babcock then read Wilson his *Miranda* rights, and asked Wilson to read them to himself, then aloud. Wilson declined to have his rights read to him in the Navajo language. He said he understood his rights and would talk to the agents about his son. The agents questioned Wilson about Melvin for approximately 1 hour and 42 minutes. Wilson thrice denied abusing his son. Agent Babcock told Wilson that he was lying and that it would be easier for him if he "got it off his chest." Babcock then asked Wilson whether he had been a victim of child abuse himself. At this point, Wilson broke down and started crying. He then confessed to having abused Melvin.

The FBI concluded its questioning at approximately 4:00 p.m., by which time the tribal court, which met upstairs in the same building, had completed the day's arraignments. Because he was being questioned, Wilson missed the regularly scheduled arraignment calendar. After Wilson confessed, Sgt. Hawkins took him up to the judge's chambers to be arraigned specially.

Melvin Wilson never regained consciousness and eventually died.

### The district court's interpretation of § 3501.

The district court's construction of 18 U.S.C. § 3501(c) (1982) is reviewed *de novo. United States v. Fouche,* 776 F.2d 1398, 1405 (9th Cir.1985). In 1968, Congress enacted § 3501 as part of the Omnibus Crime Control and Safe Streets Act. The statute was a response in part to a line of cases which established the *McNabb–Mallory* rule. *See Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed. 2d 1479 (1957); *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). *See also Upshaw v. United States,* 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948). Section 3501(a) provides that a confession "shall be admissible in evidence if it is voluntarily given." Subsection (b) sets forth factors which the court must consider in making a determination of voluntariness,

based on "all the circumstances surrounding the giving of the confession."[1] Subsection (c) deals specifically with the question of prearraignment delay. It states that a confession

> shall not be inadmissible solely because of delay in bringing [the defendant] before a magistrate ... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention.

18 U.S.C. § 3501(c) (1982). The subsection also provides that the six-hour time limit shall not apply where the delay is found to be reasonable in light of transportation and distance to the nearest magistrate.

The district court relied on this court's decisions in *United States v. Manuel*, 706 F.2d 908 (9th Cir.1983), and *United States v. Edwards*, 539 F.2d 689 (9th Cir.), *cert. denied*, 429 U.S. 984, 97 S.Ct. 501, 50 L.Ed. 2d 594 (1976). Those cases in turn relied on this court's decision in *United States v. Halbert*, 436 F.2d 1226 (9th Cir.1970).

In *Halbert*, this court took considerable pains to explain the significance of § 3501(c) which had been passed in part to ameliorate the effect of *United States v. Mallory*, 354 U.S. 449, 77 S.Ct. 1356, which had been applied to invalidate confessions based solely on undue delay between arrest and arraignment. The *Halbert* court concluded:

> ... subsection 3501(b) instructs the trial judge to consider delay in arraignment in determining the voluntariness of a confession but leaves him with a great deal of discretion on what to make of it. In this context, subsection 3501(c), in providing that confessions shall not be inad-

missible solely because of delay in arraignment if otherwise voluntary and given within six hours of arrest, merely removes some of the discretion given to the trial judge under subsection 3501(b) in determining voluntariness. Discretion remains in the trial judge, under subsection 3501(b), to exclude confessions as involuntary solely because of delay in arraignment during which a confession is given, that exceeds six hours.

This construction is consistent with the language of section 3501 and a scheme under which the admissibility of confessions turns on voluntariness. The integration, however, is not perfect. The effect of the proviso of subsection 3501(c) is to remove discretion from the trial judge by requiring him to admit a confession, otherwise voluntary, given more than six hours [after] arrest during a delay in arraignment if the delay was reasonable considering problems in transporting the defendant to the magistrate.

*Halbert*, 436 F.2d at 1234; *see also Manuel*, 706 F.2d at 913.

The cases relied upon by the district court to justify its refusal in this case to suppress Wilson's confession involved significantly different factual situations than those presented to us. They are unhelpful here. In *Edwards*, the delay beyond six hours was due solely to transportation problems, which the statute, itself, recognizes as a reasonable basis for delay. *Edwards*, 539 F.2d at 691. In *Manuel*, the court held that giving the defendant a warm meal and lodging overnight to sleep off his extreme intoxication before questioning and arraignment did not make the delay unreasonable. *See Manuel*, 706 F.2d at 914.

---

**1.** The factors include:
(1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew

that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.
18 U.S.C. § 3501(b) (1982).

*The findings that the pre-arraignment delay was reasonable and that there was no collusion between the tribal officers and federal agents.*

The district court found that the delay was "not unreasonable and that there was no purposeful postponement of the arraignment for the purpose of coercing a confession." The court also found that the tribal court's normal procedure was to arraign prisoners in the afternoon and that "the defendant was arraigned before the tribal magistrate at the first scheduled arraignment calendar subsequent to the defendant's arrest." The court found the delay reasonable and stated that the defendant was simply lodged overnight due to the unavailability of a magistrate. *See United States v. Marrero*, 450 F.2d 373, 376–78 (2d Cir.1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972). Finally, the court found no evidence that "there was any collusion between the tribal law enforcement or judicial authorities and the FBI to delay the defendant's arraignment...." *See United States v. Rubio*, 709 F.2d 146, 153 (2d Cir.1983) (finding "no purposeful postponement of arraignment").

Wilson argues that these findings are clearly erroneous. In part, we agree. The record demonstrates that Wilson was not arraigned before the tribal magistrate at the first scheduled arraignment subsequent to his arrest. On the contrary, because the FBI agents were interrogating Wilson during the arraignment calendar, his arraignment was delayed. Sgt. Hawkins testified that he knew Wilson was supposed to be arraigned while Wilson was being questioned, but that he delayed Wilson's arraignment until after the interrogation was completed and the confession obtained. By the time the interrogation had run its course, Wilson had missed the regularly scheduled arraignment calendar and Hawkins had to make special arrangements to arraign Wilson in the judge's chambers.

We must also reject as clearly erroneous the district court's implicit finding that there was no postponement of the arraignment. The delay was deliberate and for the sole purpose of obtaining a confession. Sgt. Hawkins' testimony establishes that he told the FBI agents that Wilson was supposed to be arraigned that afternoon, but that if the agents were busy interrogating Wilson when Wilson's name was called, Hawkins would arrange for an arraignment after the agents "were done with" Wilson. The clear implication of this testimony is that Hawkins agreed to delay the arraignment until the agents had obtained a confession or had convinced themselves that none would be forthcoming.

 The finding that the delay was reasonable is also clearly erroneous. Subsection (c) excuses delays for more than six hours only when such delay "is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer." As Sgt. Hawkins testified, the arraignments were being conducted one flight upstairs from the room where Wilson was being questioned, and the magistrate was open for business while Wilson was being questioned. Even assuming that the delay overnight was reasonable,[2] there is no reasonable excuse why Wilson was not promptly arraigned at the beginning of the arraignment calendar the next day. *See Fouche*, 776 F.2d at 1406–07. The desire of the officers to complete the interrogation is, perhaps, the most unreasonable excuse possible under § 3501(c).[3]

*Voluntariness of the confession under § 3501.*

Given the unreasonable delay, the question remains whether the confession nonetheless was voluntarily given within the intent of the statute. There has been some

---

2. We do not sanction delay of any kind, and continue to scrutinize for reasonableness delays over six hours which are not made necessary by transportation problems. *Manuel*, 706 F.2d at 914.

3. The defendant also objects to the finding that there was no collusion between the tribal officers and the FBI agents. Although we share some doubts as to the accuracy of this finding, our holding does not depend on that finding. Thus, we need not reach the issue.

confusion among our recent cases concerning the proper standard of review for the issue of the voluntariness of a confession. In *Fouche*, we stated that a district court's decision to suppress a confession under § 3501(c) "requires an 'essentially factual' determination" on voluntariness which is reviewed for clear error. *Fouche*, 776 F.2d at 1404. Recently, however, the Supreme Court has suggested that findings regarding voluntariness of a confession will be reviewed *de novo. See Colorado v. Connelly*, —— U.S. ——, 107 S.Ct. 515, 522–24, 93 L.Ed.2d 473 (1986); *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 2145, 90 L.Ed. 2d 636 (1986) (observing that "[t]he manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness"). We have followed this suggestion in two recent cases reviewing the voluntariness of a confession under due process standards. *United States v. Crespo de Llano*, 830 F.2d 1532, 1541, & n. 2 (9th Cir.1987); *United States v. Wolf*, 813 F.2d 970, 974 (9th Cir.1987). Although we doubt that the standard for reviewing a determination regarding the voluntariness of a confession under § 3501 differs from the standard for reviewing a determination regarding the voluntariness of a confession under a due process analysis, we need not characterize a subspecies of standard because we hold that the finding of voluntariness under § 3501 was clearly erroneous.

■ Section 3501(b) lists five factors which must be considered in determining voluntariness. It goes on to state that "[t]he presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness...." *Id.* The court made no finding on factor two—whether Wilson knew the nature of the charges against him and of which he was suspected. We note, however, that the agents knew Wilson had only a seventh grade education and had been arrested before only on tribal or drinking offenses.

The remaining four factors are split. Two factors weigh in favor of a finding of involuntariness, while two factors support a finding of voluntariness. Wilson was without assistance of counsel when he made his confession. And, as noted above, the delay was clearly unreasonable and lasted far beyond the six-hour limit necessary for a conclusive presumption of reasonableness. The fact that unreasonable delay, alone, beyond six hours may support a finding of involuntariness suggests that unreasonable delay is the most important factor of all. *See Manuel*, 706 F.2d at 913; *Halbert*, 436 F.2d at 1234.

On the other hand, Wilson was informed of his right to assistance of counsel and that any statement he made might be used against him. The court found no evidence that Wilson ever expressed any desire to have an attorney present during questioning or that he was unwilling to speak to the agents about the injuries to his son, or that Wilson did not understand his *Miranda* rights.

Although relevant, of course, these factors do not persuade us that the confession was "voluntary" within the meaning of the statute. This court has upheld a district court's finding of involuntariness in a similar factual situation where the defendant had been read his *Miranda* rights and waived them. *See Fouche*, 776 F.2d at 1401, 1406–07. The facts in this case are, if anything, more suggestive of coercion than those in *Fouche*. The delay in both cases was about twenty hours, both defendants were questioned twice, and the government's conduct in each case caused them to miss the first regularly scheduled arraignment calendar. Fouche, however, was questioned in a car for only about fifteen minutes. Wilson, by contrast, was questioned for more than two hours in the jail where he had been kept in solitary confinement under special security precautions. Wilson did not confess until Agent Babcock, utilizing skillful psychological techniques, asked him whether he had been abused as a child himself. Here, the only purpose for evading the statutory duty to have the defendant arraigned promptly was to get the confession first.

The government's reliance on the waiver of *Miranda* rights becomes weaker as the period of pre-arraignment detention increases. If unreasonable delay in excess of six hours can itself form the basis for a finding of involuntariness, that same delay may also suggest involuntariness of the *Miranda* waiver. *See Frazier v. United States,* 419 F.2d 1161, 1167 (D.C.Cir.1969) (noting that the government's "already 'heavy burden' of showing effective waiver" increases with the delay between arrest and confession).

Given our holding in *Fouche* and the long delay which undermines a valid waiver of Wilson's *Miranda* rights, we cannot say that Wilson's apparent waiver of his rights to remain silent and to have an attorney present will overcome the other factors which support a finding of involuntariness. The purposes embedded in § 3501—to prevent confessions extracted due to prolonged pre-arraignment detention and interrogation, and to supervise the processing of defendants from as early a point in the criminal process as is practicable—are frustrated when the arraignment of a defendant who has been in custody for more than six hours is further delayed for no purpose other than to allow further interrogation of the defendant. If we countenance the police procedure followed here, we give officers a free hand to postpone any arraignment until a confession is obtained. That was not the legislative intent behind § 3501. It was error to deny the suppression motion.

REVERSED.