**Leonard D. EVERETTS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–38.**

District of Columbia Court of Appeals.

Argued Feb. 11, 1993.
Decided June 28, 1993.

---

William T. Morrison, Silver Spring, MD, appointed by the court, for appellant.

Albert A. Herring, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Asst. U.S. Atty., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

Found guilty by a jury of felony murder while armed (D.C.Code §§ 22–2401, –3202 (1989)), three counts of armed robbery (D.C.Code §§ 22–2901, –3202), and one count of attempted robbery while armed (D.C.Code §§ 22–2902, –3202), appellant contends that his confession made to the police following his arrest was the product of "unnecessary delay" under Rule 5(a) of the Superior Court Rules of Criminal Procedure and 18 U.S.C. § 3501, and should have been suppressed for that reason. He also challenges the adequacy of the instructions given the jury relating to felony murder. Although the circumstances surrounding appellant's confession are troubling, in particular the delay of eleven hours before this 16–year–old was taken before a judicial officer, during most of which he was handcuffed to a desk, we sustain the trial judge's finding that the confession was made in compliance with 18 U.S.C. § 3501 and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and was therefore admissible. Rejecting as well appellant's challenge to the jury instructions, we affirm the convictions except that we remand with directions to vacate the conviction for attempted robbery while armed, the predicate to the charged felony murder. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

## I.

On December 27, 1989, appellant—then sixteen years old—and three codefendants were arrested at approximately 4:30 a.m. for the armed robbery of Jeffrey Crocker. After first being taken to the Youth Branch of the Metropolitan Police Department, appellant was brought to the Homicide Branch between 6:30 and 7:00 a.m. for questioning about the murder of John Coleman. There he remained handcuffed to a desk in an interview room until approximately 3:00 p.m., without being questioned. The three other suspects were detained elsewhere in the Homicide Branch. According to a detective, appellant was not

questioned until 3:00 p.m. because the police were investigating the robbery and homicide and engaged in "large amounts of paperwork" related to these events. During his detention, appellant was given the opportunity to make one telephone call and was asked if he wanted something to eat or to use the bathroom.

At about 3:00 p.m., Detective Victor Smith advised appellant of his *Miranda* rights and asked whether he would make a statement without the benefit of an attorney. Before informing him of his rights, Smith told appellant that he "had talked with some other people that were in [appellant's] company at the time of his arrest," and that the investigation "had disclosed some circumstances that associated them with the homicide." Smith intended "to make [appellant] aware ... that [he] would be attempting to get statements from everyone involved." Appellant responded that he understood his rights and agreed to make a statement on videotape without an attorney present. At about 3:15 p.m., Detective Mayberry advised appellant of his rights a second time, and he again acknowledged his understanding of them and willingness to talk, signing a PD–47 rights card to that effect. At 3:26 p.m., two detectives began the videotaped interview after confirming with appellant his previous understanding of his rights and consent to talk without a lawyer present. The interview concluded at 3:42 p.m.

In his taped statement, appellant implicated himself directly or indirectly in the murder of John Coleman and the armed robberies of Jeffrey Crocker, Christie Lancaster, and Sherrie Fisher. He explained that he and the other defendants had been "riding around" in two separate cars early on December 27, 1989, when they stopped and robbed "this boy." Everyone got out of the cars, and his companions repeatedly struck the victim, but appellant "didn't get

to hit him" because a dog came on the scene. The group rode around some more before one of them robbed a second person, Crocker, at gunpoint. They then drove around the corner before "jump[ing] out on these two girls," Fisher and Lancaster, and robbing them at gunpoint of a coat and earrings. (Lancaster's earrings were later found in appellant's coat pocket). Finally, after additional driving, the occupants of both cars stopped when they saw a man, Coleman, walking along the street. An occupant of the second car got out, ran past Coleman, and motioned with his hand while looking at appellant and codefendant Alston. Appellant and Alston got out of their car, and Alston approached Coleman and struck him with his gun, causing him to fall to the ground. As appellant ran back to the car, he heard three gun shots. Coleman was shot four times in the back and died as a result.[1]

In his oral motion to suppress the confession, appellant contended only that the statement was involuntary in the classic sense. In ruling on the motion, however, the trial judge raised independently the issue of whether the eleven-hour delay between appellant's arrest and his presentment to a judicial officer violated the "without unnecessary delay" provision of Super.Ct.Crim.R. 5(a), making his statements suppressible under the *McNabb/Mallory* rule[2] and 18 U.S.C. § 3501. The judge found in this regard "that the Government has not presented any evidence that the time for the routine processing of this man required eleven hours before he could be brought to court and[,] indeed, the only evidence before the Court is that basically nothing was done with [appellant] between about 7:00 o'clock in the morning and 3:30 in the morning [*sic;* afternoon]." The judge also found it "clear that a ... judicial officer would have been available." In

---

1. Appellant was tried separately from his codefendants. At trial Crocker, Lancaster and Fisher all testified and described the assaults against them. An eyewitness, James Gunn, corroborated portions of appellant's statement concerning the shooting of Coleman. The evidence implicating appellant in the felony murder was sufficient without regard to whether appellant per-

sonally brandished a gun during any of the assaults.

2. *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

short, the judge concluded that the delay in presenting appellant to a judicial officer was unnecessary. On the other hand, the judge found that appellant was advised of his *Miranda* rights—"albeit quite late in the game[,] ... in the vicinity of 2:30 to 3:30 [p.m.]"—and both "under[stood] those rights and ... execute[d] a valid waiver" of them. The judge found no evidence "that the delay here of eleven hours was calculated" or intended to "psychologically or otherwise coerce [appellant]." Furthermore, he concluded that,

> other than the delay, there are no real—other real indicia of involuntariness in the case and I say that based in part upon an objective examination of the factors that go to voluntariness and in part upon my own observation of the videotape, the confession.
>
> It's clear to me that notwithstanding the defendant's age, he knew very clearly what was going on. It's clear from the tape that he was calm. He was collected. He was rational. He did not show any apparent effects of being intimidated or threatened or being scared.
>
> There is no indication on the tape that he was intoxicated or otherwise under the effect of drugs. There are no indications and inquiries [*sic*] about his age or his reading ability or his intelligence [which] would have borne fruit in reflecting that he was not able to understand and know what was going on. To the contrary, the tape reflects that he clearly knew what was going on.
>
> And there is no evidence of any fear, threats, coercion or force, physical or psychological, no evidence of any offer of award [*sic; reward*]. The length of time of the statement itself [was] certainly relatively minimal, within reasonable constraints. I think it was twenty to thirty minutes, as I recall, from looking at the clock on the wall.
>
> [T]here were one or two officers present. I don't even—they were in uniform. Their presence certainly was not intimidating by its nature, and given all of the

circumstances surrounding the confession except for the extraordinary delay, I would find the confession voluntary.

After reviewing binding decisions of this court and the United States Court of Appeals for the District of Columbia Circuit[3] concerning the relation between delay in presentment and a *Miranda* waiver, the judge ruled that the delay alone did not require suppression. "[O]nce somebody validly waives their *Miranda* rights, everything that *Mallory*[, *supra*, note 2] sought to accomplish has been accomplished and I don't think ... there's any *Mallory* problem and I don't think there's any voluntar[iness] problem." The judge therefore denied the motion to suppress.

## II.

We recently summarized the law governing the interplay of Super.Ct.Crim.R. 5(a), 18 U.S.C. § 3501, and a valid waiver of *Miranda* rights. In *Bond v. United States*, 614 A.2d 892 (D.C.1992), we explained:

> Super.Ct.Crim.R. 5(a) provides that an arresting officer "shall take the arrested person without unnecessary delay before the Court." We have held that a confession obtained during a period of unnecessary delay is inadmissible in evidence. But we have further held, repeatedly, that "a valid waiver of an individual's *Miranda* rights is also a waiver of his *Mallory* right to presentment without unnecessary delay."

*Id.* at 899 (citations omitted). *See also Byrd v. United States*, 618 A.2d 596 (D.C. 1992). In *Bond* we observed, for example, that in *Bliss v. United States*, 445 A.2d 625 (D.C.), *amended on other grounds*, 452 A.2d 172 (D.C.1982), we had upheld the admission of the defendant's voluntary statements although his confession "took place more than twelve hours after his arrest but after he had validly waived his *Miranda* rights several times." *Bond*, 614 A.2d at 899. In *Bond* we also discussed the effect that the later-adopted 18 U.S.C. § 3501 had upon Rule 5(a) (which by its

---

**3.** *Pettyjohn v. United States*, 136 U.S.App.D.C. 69, 419 F.2d 651 (1969), *cert. denied*, 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970); *Woodson v. United States*, 488 A.2d 910 (D.C.1985).

terms "shall not be construed to conflict with or otherwise supersede [18 U.S.C. § 3501]") and the Supreme Court's decisions in *McNabb* and *Mallory, supra* note 2:

> 18 U.S.C. § 3501 plainly directs the admissibility analysis to "the issue of voluntariness of the confession" and provides that, as relevant to this case where the delay exceeded six hours, the trial court was obliged to consider as one factor—though it "need not be conclusive"—the time elapsing between appellant's arrest and presentment. "[T]he prime purpose of Congress in the enactment of § 3501 was to ameliorate the effect of the decision in *Mallory* [so as] to remove delay alone as a cause for rejecting admission into evidence of a confession...." Under the statute, "[t]he extent and nature of a suspect's detention may ... be taken into account, as part of the totality of pertinent circumstances, in determining whether a confession was inadmissible for lack of voluntariness [in fact]" or voluntariness of the *Miranda* waiver.

*Id.* at 900 (citations omitted). *See Byrd,* 618 A.2d at 599. Hence, recognizing that voluntariness of the confession and of the waiver are the touchstone of analysis under § 3501, we have rejected appellant's argument that a valid *Miranda* waiver cannot waive a prior period of unnecessary delay. *See also Thomas v. United States,* 351 A.2d 499, 501 n. 4 (D.C.1976). At the same time, however, we cautioned in *Bond* that " '[t]he government's reliance on the waiver of *Miranda* rights becomes weaker as the period of pre-arraignment detention increases.' " 614 A.2d at 901 (quoting *United States v. Wilson,* 838 F.2d 1081, 1087 (9th Cir.1988)).

In *Bond* we held that a pre-presentment delay of thirty-six hours between arrest and the confession "did not affect the totality of the circumstances demonstrating appellant's voluntary waiver," and we thus sustained the admission of the confession. *Id.* (footnote omitted). Significantly, however, "the [trial] judge [in *Bond*] found the

delay to be reasonable" because the arrest took place on a weekend and the defendant's own deceptive conduct contributed to the inability to get him to court before the Saturday morning deadline for presentments. *Id.* In this case, by contrast, the trial judge found no justification for the delay in presentment. Also, neither *Bond* nor our most recent decision on this subject, *Byrd,* apparently involved the detention of a juvenile, a factor which the court has recently made clear requires special attention in considering the voluntariness of a consent. *In re J.M.,* 619 A.2d 497, 502–04 (D.C.1992) (en banc) (consent to search of person). Finally, our admonition in *Bond* that reliance on a *Miranda* waiver becomes weaker as the length of pre-presentment detention grows necessarily implies that *at some point* unjustified delay in presentment may trump all other factors in the ultimate voluntariness determination.

■ Consequently, we find this a troublesome case to decide given the facts (1) of an unnecessary delay of eleven hours in presentment (2) of a 16–year–old boy (3) who for up to eight hours of that detention was handcuffed to a desk, severely restricting his movement. Appellant points in addition to the potential psychological coercion (intended by the police or not) implicit in the youth's being told by the detective that his codefendants were also being interrogated about the crimes.[4] In seeking to justify the delay, the government argued to the trial judge that some latitude must be allowed the police in a multi-suspect case involving a spree of robberies culminating in a homicide, with the attendant need to identify civilian witnesses. But the record of what transpired during the eight hours is sketchy, and we certainly agree with the judge that the detective's explanation of "large amounts of paperwork" could not justify essentially ignoring appellant for eight hours or more in a position of obviously increasing physical discomfort. In short, our concerns in this case must serve as a warning to the police that unnecessary pre-presentment delay of this length, ag-

**4.** *See* A. RAPOPORT, FIGHTS, GAMES, AND DEBATES (1960).

gravated by factors such as youth, will be met with serious skepticism by the courts of this jurisdiction about the voluntariness of an ensuing *Miranda* waiver.

■ Having said this, we nonetheless find substantial support in the record for the trial judge's conclusion that appellant's waiver of his rights was knowing, intelligent, and voluntary. *E.g., Byrd,* 618 A.2d at 598 ("We will not overturn the trial court's findings of fact on [the *Miranda* waiver] issue unless they are without substantial support in the evidence"). In addition to hearing the testimony of the detectives, Judge Greene viewed the videotape of appellant's statement, as have we. It supports the judge's findings that appellant "knew very clearly, what was going on"—although it is doubtful he knew the legal, *i.e.,* felony-murder, implications of his admissions—and showed no signs of psychological manipulation by the police. The taped interview itself was not preceded by any interrogation,[5] unlike in *Byrd, supra,* where we upheld the waiver despite repeated antecedent questioning and a six-hour delay in presentment. And appellant showed no hesitation in answering the detectives' questions. Although he was handcuffed to the desk for eight hours, he was offered food and the opportunity to make a phone call and use the bathroom.[6] Viewed from his present perspective, the police in leaving him alone during this time were playing "mind games" by letting him worry about the cooperation of his codefendants; but in that same apparent indifference to appellant the judge reasonably found "no evidence of any fear, threats, coercion or force, physical or psychological, [and] no evidence of any offer of award [*sic;* reward]." Finally, in keeping with our decision in *In re J.M.,* the judge focused explicitly on appellant's youth, and found that despite his age he displayed normal intelligence and alertness to his surroundings, and no sign of fear or intimidation.

We hold, therefore, that the facts in this case are not sufficiently distinguishable from those in *Byrd, Bond, Bliss,* or other decisions of ours sustaining the admission of a confession despite pre-presentment delay, for us to reverse the denial of the suppression motion.

Despite its attempt to distinguish our prior decisions such as *Byrd* and *Bond, supra,* our concurring colleague's opinion that unnecessary delay in presentment alone (in excess of six hours) is ground for suppressing a confession without regard to the validity of an ensuing *Miranda* waiver cannot be reconciled with our decisions and must be presented to the court *en banc.* The rule we distilled from our precedents in *Bond, i.e.,* that a primary purpose of 18 U.S.C. § 3501 was "to remove delay alone as a cause for rejecting admission into evidence of a confession," 614 A.2d at 900 (citations and internal quotation marks omitted), was certainly not understood to apply only to delay *following* a waiver of *Miranda* rights.[7] The distinction between pre-waiver delay (suppression without more) and post-waiver delay (suppression if *Miranda* waiver involuntary) that is key for the concurring opinion is not supported by our decisions. As to the purported clash of *Byrd* and *Bond* with earlier binding decisions of the United States Court of Appeals for the District of Columbia Circuit, *see post* at 991, that conflict would undoubtedly come as a surprise to the authors of the entire chain of decisions of this court preceding *Bond, see* 614 A.2d at 899, which applied waiver analysis in the man-

5. Detective Smith's conversation with appellant in which he informed him that he was a suspect and obtained his agreement to make a videotaped statement lasted "less than four minutes."

6. At the beginning of the taped interview, appellant stated that "I [have] been offered something to drink, and went to the bathroom and had a phone call."

7. In *Byrd, supra,* for example, there is no indication that the defendant had waived his *Miranda*

rights (as distinct from merely being informed of them) between his arrest and the waiver of his rights more than six hours later. And in *Bond* we explicitly took into account the defendant's repeated waivers during the thirty-six hour post-arrest period as *one factor* in the totality of the circumstances bearing on the voluntariness of the waiver. *See* 614 A.2d at 901.

ner we do here as consistent with prior Circuit Court precedent binding on us. *E.g., Hawkins v. United States*, 304 A.2d 279, 281 (D.C.1973). And *see United States v. Poole*, 161 U.S.App.D.C. 289, 294, 495 F.2d 115, 120 (1974).

Furthermore, the concurring opinion does not explain how a statute (§ 3501) which declares at the very outset that "a confession ... shall be admissible in evidence if it is voluntarily given," and expressly purports to make violation of *Miranda's* requirements only *one factor* "in determining the issue of voluntariness," *see* § 3501(b)(3),[8] was nonetheless intended to permit exclusion of a confession solely because Rule 5(a) has been violated, without any regard to the voluntariness of the confession or the *Miranda* waiver.

The concurring opinion faults us (or rather this court's prior decisions) for merely emphasizing that as the length of pre-presentment delay increases, it undermines the government's ability to establish a voluntary *Miranda* waiver. *E.g., Bond*, 614 A.2d at 901 ("[t]he government's reliance on the waiver of *Miranda* rights becomes weaker as the period of pre-arraignment detention increases") (citations omitted). According to the concurrence, this provides "no limiting principle" and "one can only speculate" as to when such delay, considered together with all other factors, will render a waiver involuntary. *Post* at 993–994. But the very same criticism of indefiniteness can be made of the concurring opinion's rule that once six hours have elapsed, delay in presentment alone may dictate suppression so long as a trial judge considers it "too long," without regard to its impact on the voluntariness of the confession or the *Miranda* waiver. Even if our decisions did not compel us to do so, we would adhere to our understanding of § 3501 as requiring the trial judge to take unnecessary delay "into consideration [as part of] all the circumstances surrounding

the giving of the confession...." § 3501(b).

## III.

 Appellant was convicted of first degree felony murder. He contends that the jury should have been given a lesser included offense instruction on *second degree* felony murder that would allow a conviction of second degree murder if the jury found he had committed an underlying felony, but the attendant homicide resulted from the killer's "own agenda rather than the common purpose" of the felony. Appellant concedes it is unclear whether the offense of second degree felony murder exists in the District of Columbia, and also admits he "never clearly articulated" a request for such an instruction. In truth, appellant did not request at all the instruction he now advocates. He asked only for instruction on the "lesser included offense of second degree murder," which the trial court gave. Since appellant did not "stat[e] distinctly" the omission to which he now objects in the court's instructions, Super.Ct.Crim.R. 30, the judge had no occasion to consider his theory of residual second degree felony murder. Nor did the judge commit "plain error" in failing to so instruct, *e.g., Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc), for the very uncertainty appellant concedes as to whether such a category even exists, or whether it would fit his circumstances,[9] demonstrates the absence of plain error. Moreover, the jury was instructed on second degree murder, hence had adequate opportunity to consider whether to convict appellant of the lesser included offense.

At oral argument, though not in his brief, appellant made a separate argument that it was plain error for the judge not to instruct the jury that, in order to convict him of first degree felony murder, it must find that the murder was committed in

---

8. Whether it succeeds in doing this constitutionally is an issue the Supreme Court has not had occasion to decide.

9. *See Comber v. United States*, 584 A.2d 26, 40 n. 15 (D.C.1990) ("[I]t might be argued that Congress left a residual category of second degree

felony murder, in which the malice required for murder stems from *the commission of a non-enumerated felony*") (emphasis added). Appellant, of course, was charged with and found guilty of a statutorily enumerated felony.

furtherance of the common felonious scheme. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.22(C) (3d ed.1978); *see also Butler v. United States,* 614 A.2d 875, 886 (D.C.1992). Our review of the transcript, however, reveals that when the prosecutor called the judge's attention to this precise omission, the judge supplemented the jury instructions with the charge appellant claims was not given. Thus, there was no error at all in the instructions.

### IV.

We therefore remand the case to the Superior Court with directions to vacate the conviction for attempted robbery. In all other respects the judgment of conviction is affirmed.

*So ordered.*

ROGERS, Chief Judge, concurring:

This appeal presents an issue of first impression. The eleven hour delay in this case, in excess of the six-hour safe harbor of 18 U.S.C. § 3501(c), was found by the trial judge to be unreasonable delay. In interpreting the requirements of Super.Ct.Crim.R. 5(a), the court has not, with one exception, previously been confronted with a period of delay in excess of the six-hour safe harbor prior to a suspect's waiver of *Miranda*[1] rights. The one exception, *Byrd v. United States,* 618 A.2d 596 (D.C. 1992) (originally released as an unpublished memorandum opinion and judgment), involved delay that may have very slightly exceeded six hours, *see* note 11, *infra,* but the court did not discuss 18 U.S.C. § 3501(c). Nor did the *Byrd* court specifically state whether the defendant's *Miranda* waiver constituted waiver of the delay between his arrest and his statement, as well as the delay between his statement

and his presentment after being held overnight. The *Byrd* court also was not confronted with a finding by the trial court that the delay was unreasonable; this court simply described the delay as "extraordinarily long."[2] *Byrd, supra,* 618 A.2d at 599. Thus, until now the court has not addressed the application of § 3501(c) to a period of pre-*Miranda*-waiver *unreasonable* delay in excess of six hours.

Notwithstanding the assumption by the majority about the implicit understandings in our prior decisions, *see* majority opinion at 986–987, the court has not previously held that a valid *Miranda* waiver operates retroactively, i.e., that it waives a prior period of *unreasonable* delay. Until *Bond v. United States,* 614 A.2d 892 (D.C.1992), where the court concluded that a *Miranda* waiver trumps subsequent delay in presentment, the court had not confronted the impact of the federal statute, 18 U.S.C. § 3501(c) (1988), much less D.C.Code § 4–140 (Repl.1988), on delay in presentment. *See id.* at 899. Hence, the majority cannot properly suggest either that the court has held that a valid waiver operates retroactively as well as prospectively, *see* majority opinion at 985, or that "the authors of the entire chain of decisions of this court" would be surprised to learn that the waiver analysis is limited by the federal statute. *See* majority opinion at 986. Heretofore the court has not had to confront the requirements of the federal statute in terms of the distinction between pre- and post-*Miranda* waiver delay in presentment.

Moreover, in the instant case, for the first time, the court is presented with a situation in which a youth is held for eleven hours after his arrest for a period of unnecessary delay before waiving his *Miranda* rights and giving a confession to the police. *Cf. In re J.M.,* 619 A.2d 497, 502–04 (D.C. 1992) (en banc) (acknowledging special find-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The *Byrd* court specifically noted that "there is no evidence that this delay was either intended to coerce or actually had the effect of coercing [the defendant's] testimony," and that a motions judge described the interview as very "fair, effective, [and] gentle." *Id.* at 599. In the instant case, in contrast, there was an implication that police delayed arraignment with the intent to coerce, or at least facilitate, confession: government witnesses could produce no reason for the delay, and a detective testified that he wanted to be sure appellant knew that his co-defendants would be questioned, implying that the police were using psychologically manipulative tactics.

ings required, regarding "the effect of age and relative immaturity on the voluntariness of the defendant's consent," where minor's consent to a search is at issue). Indeed, the court is presented with a situation in which the totality of circumstances under which a purported waiver occurs indicates that the trial judge erred in finding that the waiver was voluntarily and intelligently made.

Super.Ct.Crim.R. 5(a) provides, in pertinent part, that:

An officer within the District of Columbia making an arrest ... or receiving a person arrested ... shall take the arrested person without unnecessary delay before the Court. * * * *This Rule shall not be construed to conflict with or otherwise supersede section 3501 of title 18, United States Code.*[3] [Emphasis added.]

In interpreting this rule, the court has looked to the federal rule and its interpretation.[4] *See, e.g., Bond, supra,* 614 A.2d 892; *see also Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 474 (D.C.1983) (federal decisions may be persuasive authority for interpreting a local rule which is identical to a federal rule).

In addressing the instant appeal the purposes of the prompt arraignment requirement bear repeating. The Supreme Court explained in *McNabb v. United States,* 318 U.S. 332, 343–44, 63 S.Ct. 608, 614–15, 87 L.Ed. 819 (1943), that "[t]he purpose of this impressively pervasive requirement of criminal procedure [that a person be taken 'forthwith' and 'immediately' to a committing magistrate or judicial ·officer] is plain[,] [and] aims to avoid all the evil implications of secret interrogation of persons accused of crime." The federal rule, in turn, which codifies the statutory right to a speedy arraignment, serves at least three important interests: to

(1) "protect[ ] the citizen from deprivation of liberty as a result of an unlawful arrest by requiring that the Government establish probable cause," (2) "effectuate[ ] and implement[ ] the citizen's constitutional rights by insuring that a person arrested is informed by a judicial officer" of those rights, and (3) "minimize[ ] the temptation and opportunity to obtain confessions as a result of coercion, threats, or unlawful inducements."

*United States v. Alvarez–Sanchez,* 975 F.2d 1396, 1398 (9th Cir.1992) (quoting 113 Cong.Rec. 36,067 (1967) and citing *McNabb, supra,* 318 U.S. at 343, 63 S.Ct. at 614). While statutory provisions have been enacted by Congress to ameliorate strict requirements for prompt presentment, the federal courts have recognized that delay and the circumstances surrounding delay remain incompatible with the basic statutory purposes.[5] *United States v. Robinson,* 142

---

3. Rule 5(a) also provides that "[b]efore taking an arrested person before the Court, an officer may perform any recording, fingerprinting, photographing, or other preliminary ·police duties required in the particular case, and if such duties are performed with reasonable promptness, the period of time required therefor shall not constitute delay within the meaning of this Rule." Super.Ct.Crim.R. 5(b), in turn, provides that:

The Court shall inform the defendant of the complaint against the defendant and of any affidavit filed therewith, of the defendant's right to retain counsel, and of the defendant's right to the assignment of counsel if the defendant is unable to obtain counsel. The Court shall also inform the defendant of the defendant's right to have a preliminary examination if a felony is charged. The Court shall inform the defendant that the defendant is not required to make a statement and that any statement made by the defendant may be used against the defendant. The Court shall allow the defendant reasonable time and opportunity to consult counsel and shall release or detain the defendant as provided by statute or in these Rules.

4. Fed.R.Crim.P. 5(a) provides, in pertinent part:

An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

5. 18 U.S.C. § 3501(c), as amended in 1968, provides:

In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of

U.S.App.D.C. 43, 53–54, 439 F.2d 553, 563–64 (1970) (18 U.S.C. § 3501(c) does not nullify rule under *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), but only restricts its application in certain circumstances); *see also Alvarez–Sanchez, supra,* 975 F.2d at 1402–03 (interpreting *Robinson* as recognizing that confessions should be suppressed where delay is unreasonable). The statute provides both that a voluntary confession is admissible and that a confession may be excluded solely because of delay in excess of six hours. *See United States v. Perez,* 733 F.2d 1026, 1031–32, 1034 (2d Cir.1984).

Thus, even where there is a valid *Miranda* waiver, the federal courts have acknowledged that some delays are so long that confessions must be deemed to be inadmissible. *See Frazier v. United States,* 136 U.S.App.D.C. 180, 186, 419 F.2d 1161, 1167 (1969) (some delays are so long that waiver cannot be voluntary); *United States v. Wilson,* 838 F.2d 1081, 1086 (9th Cir.1988) ("The fact that unreasonable delay, alone, beyond six hours may support a finding of involuntariness suggests that unreasonable delay is the most important factor of all") (citing *United States v. Manuel,* 706 F.2d 908, 913 (9th Cir.1983); *United States v. Halbert,* 436 F.2d 1226, 1234 (9th Cir.1970)); *Alvarez–Sanchez, supra,* 975 F.2d at 1400–01, 1403, 1405 (some confessions may be suppressed on basis of delay alone, where unreasonable delay lasts longer than six hours);[6] *Perez, supra,* 733 F.2d at 1035 (unreasonable delay of over six hours may lead to statement's exclusion, even without finding statement involuntary); *United States v. Yunis,* 273 U.S.App.D.C. 290, 304–05, 859 F.2d 953, 967–68 (1988) (interpreting *Robinson, supra,* 142 U.S.App.D.C. at 53–54, 439 F.2d at 563–64, as stating that "section 3501(c) modifies but does not eliminate the court's authority to suppress confessions under *McNabb–Mallory* because of delay in arraignment"); *see also United States v. Poole,* 161 U.S.App.D.C. 289, 299 & n. 8, 495 F.2d 115, 125 & n. 8 (1974) (interpreting *Robinson, supra*).

Because the concern underlying *Mallory, supra,* 354 U.S. 449, 77 S.Ct. 1356, is ultimately with "effectuation of Fifth and Sixth Amendment protections against the dangers of involuntary self-incrimination in

any law-enforcement officer or law-enforcement agency, shall not be inadmissible *solely* because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia *if* such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury *and* if such confession was made or given by such person *within six hours* immediately following [her or] his arrest or other detention: *Provided,* that the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer. [Emphasis added.]

**6.** In *Alvarez–Sanchez, supra,* 975 F.2d at 1399, the United States Court of Appeals for the Ninth Circuit concluded, on the basis of the statutory language and a review of the background of the 1968 amendments, that "[t]he clear effect of [§ 3501(c) ] is to create a six-hour 'safe harbor' during which a confession will not be excludable on the basis of the *McNabb–Mallory* rule." The court noted that the statute also allowed time for reasonable delay due to "the means of transportation and the distance to be traveled to the nearest available magistrate or other officer." *Id.* at 1399–1400. Explaining further, the court stated that:

> § 3501(c) modified the right to speedy arraignments so that delays of less than six hours or delays that are necessary in light of the logistics involved should be considered reasonable *per se,* but left unaltered the *McNabb–Mallory* requirement that all confessions given during an *unreasonable* delay in arraignment should be suppressed.

*Id.* at 1400. The court made clear, moreover, that its own decision in *Halbert, supra,* 436 F.2d at 1234, "recognized that '[d]iscretion remains in the trial judge, under § 3501(b), to exclude confessions as involuntary solely because of delay in arraignment, during which a confession is given, that exceeds six hours.'" *Id.* at 1403 (quoting *Halbert, supra,* 436 F.2d at 1234). The court further stated in *Alvarez–Sanchez* that "a confession may be suppressed in order to serve the prophylactic purpose of discouraging officers from unnecessarily delaying arraignments (i.e., from violating Rule 5(a)) as well as to prevent admission of an involuntary confession." *Id.*

stationhouses and with other evils inherent in police interrogation of an accused in secret," this jurisdiction places a heavy burden on the government to show that the exacting standards of *Miranda* are met when the government argues that waiver of *Miranda* rights was a waiver of *Mallory* rights. *Frazier, supra,* 136 U.S.App. D.C. at 184, 185–86 & nn. 14 & 22, 419 F.2d at 1165, 1166–67 & nn. 14 & 22 (1969) (citing *Miranda v. Arizona, supra* note 1, 384 U.S. at 475, 86 S.Ct. at 1628, and *Spriggs v. United States,* 118 U.S.App.D.C. 248, 251, 335 F.2d 283, 286 (1964)). The question here is whether the government has met that burden.

The court recently acknowledged in *Bond, supra,* that, aside from the appointment of counsel, prompt presentment under Super.Ct.Crim.R. 5 is designed to assure that there is a judicial determination of probable cause "before the suspect's liberty has been restrained significantly." *Bond, supra,* 614 A.2d at 900 n. 18; *cf.* D.C.Code § 4–140 (Repl.1988).[7] The *Bond* court relied on our decisions which concluded that a waiver of *Miranda* rights is a waiver of *Mallory–McNabb* rights. *Bond, supra,* 614 A.2d at 899. But the court also acknowledged that those prior decisions did not consider the effect of 18 U.S.C. § 3501

and D.C.Code § 4–140. *Bond, supra,* 614 A.2d at 899. Stating that the local statute had to be read in harmony with the later-enacted federal statute, the court concluded that the federal statute "provides that, as relevant to this case where the delay exceeded six hours, the trial court was obliged to consider as one factor—though it 'need not be conclusive'—the time elapsing between [the defendant's] arrest and presentment." *Id.* at 900 (quoting 18 U.S.C. § 3501(b)).[8] In so doing, the court adhered to a waiver analysis as not contradicting these statutes.[9] *Id.* at 899, 901. To the limited extent that *Byrd, supra,* considered the federal statute, it relied on *Bond.* *Byrd, supra,* 618 A.2d at 598; other citations were to prior waiver decisions that did not involve a finding of *unreasonable* delay.

However, application of this waiver interpretation to the circumstances in the instant case cannot be squared with the requirement of Rule 5(a) that the rule not conflict with the provisions of the federal statute. While waiver of *Miranda* rights may waive a suspect's *Mallory–McNabb* rights regarding *post*-waiver delay, the federal decisions hold that there are circumstances in which *pre*-waiver delay of more than six hours requires suppression

---

7. D.C.Code § 4–140 provides:
 period not to exceed 3 hours immediately following his [or her] arrest. Such person shall be advised of and accorded his [or her] rights under applicable law respecting any such interrogation. * * *
 (b) Any statement, admission, or confession made by an arrested person within 3 hours immediately following his [or her] arrest shall not be excluded from evidence in the courts of the District of Columbia solely because of delay in presentment.

8. The *Bond* court also cited *Poole, supra,* 161 U.S.App.D.C. at 294, 495 F.2d at 120 (totality of circumstances approach; defendant waived his rights within an hour of his arrest), as well as footnote 4 of *Thomas v. United States,* 351 A.2d 499, 501 n. 4 (D.C.1976); *United States v. Jackson,* 712 F.2d 1283, 1286 (8th Cir.1983); and *United States v. Shoemaker,* 542 F.2d 561, 563 (10th Cir.), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976). *Bond, Supra,* 614 A.2d at 900.

9. The proposition that pre-waiver unreasonable delay of over six hours makes a statement inad-

missible does not require en banc review, as asserted by the majority, *supra* at 986, because effectuation of the principle would not require overruling *Byrd, supra,* 618 A.2d 596 or *Bond, supra,* 614 A.2d 892. There is no occasion in the instant case to question the validity of *Bond's* analysis *per se,* but only the application of that analysis to *pre*-waiver, *unreasonable* delay of over six hours, a circumstance not presented by the facts in *Bond, supra,* 614 A.2d at 901, and a circumstance not addressed in light of § 3501(c) in *Byrd.* Furthermore, contrary to the majority's view, majority opinion at 986, that "our concurring colleague's opinion that unnecessary delay in presentment alone (in excess of six hours) is ground for suppressing a confession without regard to the validity of an ensuing *Miranda* waiver cannot be reconciled with our decisions," the problem is that our cases have failed to follow authority to this effect that is binding on this court absent en banc review. *See Robinson, supra,* 142 U.S.App. D.C. at 53–54, 439 F.2d at 563–64; *Frazier, supra,* 136 U.S.App.D.C. at 185–86 & n. 25, 419 F.2d at 1166–67 & n. 25.

of a statement under both *Mallory–McNabb* case law and Rule 5(a), as construed consistently with 18 U.S.C. § 3501(c). *See Frazier, supra,* 136 U.S.App.D.C. at 185 & n. 25, 419 F.2d at 1166 & n. 25 (waiver of *Miranda* rights does not waive Rule 5(a) rights concerning *pre*-waiver delay, although "brief" pre-waiver delays may not require suppression of confession); *Robinson, supra,* 142 U.S.App.D.C. at 53–54, 439 F.2d at 563–64 (§ 3501(c) does not nullify rule under *Mallory*, but only restricts its application in certain circumstances, and after six hours *McNabb–Mallory* applies); *cf. supra* note 5 and *Alvarez–Sanchez, supra,* 975 F.2d at 1399, 1400 (§ 3501(c) created six hours' "safe harbor" but "left unaltered the *McNabb–Mallory* requirement that all confessions given during an *unreasonable* de-

lay in arraignment should be suppressed"; "prolonged detention *prior to a confession* may weaken a person's will and thereby render a confession involuntary"). Both *Frazier* and *Robinson* are binding on this court. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

Accordingly, I cannot agree with the majority's conclusion that our cases "have rejected appellant's argument that a valid *Miranda* waiver cannot waive a prior period of unnecessary delay." [10] Majority opinion at 985. The cases cited by the majority and the government for the proposition that delay alone is not enough to justify suppression did not focus on *pre*-waiver unreasonable delay of more than six hours or, at most, made general statements without further analysis.[11] They are not con-

---

**10.** The majority's statement is not supported by its reliance on *Thomas, supra,* 351 A.2d 499, which concerned the voluntariness of a waiver of *Miranda* rights and did not address the issue presented in the instant case. The *Thomas* court observed in a footnote that neither party had discussed the applicability of § 3501. *Id.* at 500–01 n. 4. The dictum in *Thomas* addressed § 3501(b) and did not address § 3501(c). The court also did not mention the binding decisions of the United States Court of Appeals for the District of Columbia Circuit in *Frazier, supra,* and *Robinson, supra.*

**11.** *See Byrd, supra,* 618 A.2d at 597–98 (defendant arrested 7–7:30 a.m., advised of *Miranda* rights, and taken to police department headquarters; readvised of *Miranda* rights, waiver around 1:18 p.m., advised a third time of *Miranda* rights before giving a written statement; pre-waiver delay was between approximately 6 hours 18 minutes and 5 hours 48 minutes, so either 6 hour safe harbor was not exceeded or delay over 6 hours was minimal; court did not discuss § 3501(c); defendant held overnight before arraigned); *Bond, supra,* 614 A.2d at 897–900 (Saturday 2 a.m. arrest, waivers at 3 a.m. and 9:50 a.m., statement 11:35 a.m. Sunday; arraignment 4:00 p.m. Monday); *Bliss, supra,* 445 A.2d at 627–28 & n. 4, 633 (arrest at about 3:10 a.m., *Miranda* warnings given, waiver sometime after 3:15 a.m., shortly thereafter defendant told he was not under arrest and taken to hospital, arrested again sometime before 8:45 a.m., waived rights and made statement at about 10:30 a.m.; held at least overnight before arraigned); *Pettyjohn v. United States,* 136 U.S.App.D.C. 69, 71–72, 74–75, 419 F.2d 651, 653–54, 656–57 (1969) (arrest at about 2:40 a.m., statements at 2:50 a.m.; arraigned at 10:00 a.m.), *cert. denied,* 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970); *Poole, supra,* 161

U.S.App.D.C. at 291–92, 495 F.2d at 117–18 (arrest at about 8:35 p.m., waivers at 9:00 p.m. and 10:35 p.m., statement at 11:00 p.m.); *United States v. Edwards,* 539 F.2d 689, 691 (9th Cir. 1976) (not clear when waiver occurred, delay was due to transportation) (citation omitted); *Shoemaker, supra,* 542 F.2d at 563 (arrest occurred immediately *after* confession, defendant had waived his rights numerous times) (citations omitted); *United States v. Johnson,* 467 F.2d 630, 634, 636–37 (2d Cir.1972) (9:00 a.m. arrest, confession "shortly thereafter," another confession at 2:18 p.m., arraignment at 3:55 p.m.; no unnecessary delay, no claim of involuntariness), *cert. denied,* 410 U.S. 932, 93 S.Ct. 1382, 35 L.Ed.2d 595, 413 U.S. 920, 93 S.Ct. 3069, 37 L.Ed.2d 1042 (1973); *United States v. Rubio,* 709 F.2d 146, 148–49, 152–54 (2d Cir. 1983) (arrest at about 1:30 p.m. on Saturday, waiver of *Miranda* rights, questioning ended at about 3:00 p.m. same day, further questioning Monday about 11:45 a.m.; arraigned 2:15 p.m. Monday, "serious concern that lengthy delay could, under different circumstances, be used for unlawful and coercive interrogation") (citation omitted); *United States v. Marrero,* 450 F.2d 373, 375 (2d Cir.1971) (arrest at 8:05 p.m., lodged overnight, rights waived and statement made the next day, arraigned about noon; delay caused by unavailability of magistrate and would have been admissible under *Mallory–McNabb;* statement was not a confession), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972); *United States v. Mayes,* 552 F.2d 729, 731, 733–34 (6th Cir.1977) (reversing and remanding; detained at about 5:00 p.m., waiver at 7:40 p.m., confession and arraignment 3 days later, no attorney until arraignment; "the Government never offered an explanation for this arguably excessive delay, as required by the proviso to 18 U.S.C. § 3501(c)," and the trial

trolling in the instant case. Because these courts deemed a *Miranda* waiver to effectively waive any subsequent § 3501(c) defects, the courts were not confronted with the effect under § 3501(c) of unwaived and *unreasonable* delay that exceeded six hours. In contrast, the instant case raises the question of the effect of § 3501(c) where the *Miranda* waiver occurs after an unreasonable delay rather than within the six-hour safe harbor period after a suspect's arrest.

The majority states the facts in the instant case as follows: (1) there was unnecessary delay for eleven hours in police custody prior to presentment, (2) of a sixteen year old boy, (3) who for up to eight hours was handcuffed to a desk, severely restricting his movement, and (4) who was subjected to implicit psychological coercion because he could reasonably fear that his codefendants would talk to the police and was informed by a detective that the codefendants would also be asked to make a statement. *See* majority opinion at 985.

This states the facts too succinctly. Appellant was arrested at 4:30 a.m. on Wednesday, December 27, 1989. After being held for nearly two hours at the Youth Branch of the police department, he was moved to the homicide office, arriving around 6:30 a.m. to 7 a.m. In the homicide office he was handcuffed to a desk for at least eight hours, until approximately 3 p.m. After being in police custody for eleven hours, without any movement away from a desk for up to eight hours, a detective spoke to him. There is nothing to indicate that anyone had spoken to appellant during the time he had been handcuffed to the desk.[12] Before being advised of his *Miranda* rights, appellant was told by the detective, first, that the police had spoken to or would speak to others who were with appellant when he was arrested, and second, that the police investigation "had disclosed some circumstances that associated them with the homicide." *See* majority opinion at 983. The majority states that the detective wanted to be sure that appellant knew that the police were trying to get statements from "everyone involved." Majority opinion at 983. The detective then, for the first time, advised appellant of his *Miranda* rights.[13] Appellant waived his rights,[14] and thereafter proceeded to implicate himself in the crimes.

The trial judge found that there was no excuse for the delay, and hence, it was unreasonable delay. But the judge nonetheless concluded that despite eleven hours of detention, up to eight of which appellant spent incommunicado and handcuffed to a desk, appellant's *Miranda* waiver was valid because appellant "clearly knew what was going on." *See* majority opinion at 984, 986. The majority partially agrees, but it also concludes that "it is doubtful [appellant] knew the legal, *i.e.*, felony-murder, implications of his admissions." Majority opinion at 986. *See Yunis, supra,* 273 U.S.App.D.C. at 301–02, 859 F.2d at 964–65

---

court did not consider the delay in assessing voluntariness, delay not alone enough to suppress, but must be considered); *cf. United States v. Elkins,* 774 F.2d 530, 533, 534–35 (1st Cir. 1985) (regarding suppression of evidence other than statements; defendants arrested on ship, carried six days to port before arraignment and waiver; no evidence was seized during the allegedly *unnecessary* travel time, and therefore court did not reach issue of whether delay was unnecessary).

Two other cases seem to involve pre-waiver delays of more than six hours, but the opinions do not clearly indicate when the *Miranda* waivers occurred and do not focus on pre-waiver delay. *Halbert, supra,* 436 F.2d at 1230, 1231, 1232, 1234 (timing of arrest and waiver unclear; time spent in state custody a factor in determining if confession while in federal custody voluntary, focusing on reason for delay, and conclud-

ing that § 3501(c) still meant admissibility turned on voluntariness); *Jackson, supra,* 712 F.2d at 1285–87 (timing of waiver unclear; court held delay unreasonable but delay was only one factor in assessing voluntariness).

12. The trial judge noted that "the only evidence before the Court is that basically nothing was done with Mr. Everetts between about 7 o'clock in the morning and 3:30 in the morning [sic]."

13. Appellant was told that he did not have to speak to the police, anything he said could be used against him, he had the right to an attorney, and he had the right to stop speaking to the police at any time.

14. Appellant said that he was willing to make a statement without having an attorney present and that the statement could be videotaped.

(lack of knowledge of tactical legal implications does not affect voluntariness) (citing *inter alia* 1 W. LaFave & J. Israel, Criminal Procedure § 6.9 at 527 (1984)). The majority acknowledges that *"at some point* unjustified delay in presentment may trump all other factors in the ultimate voluntariness determination," and warns that such delay as occurred here, combined with a suspect's youth, will cause the court to be skeptical of the voluntariness of a *Miranda* waiver. Majority opinion at 985–986. There is no limiting principle provided by the majority for its skepticism, however, and one can only speculate what set of circumstances would suffice.[15]

Consider the circumstances at hand. Appellant, a youth of sixteen years, was held far in excess of the six-hour safe harbor of § 3501(c) that is usually applied to adults. *See supra* notes 6 & 7. Accordingly, the *Mallory–McNabb* requirements apply. *Robinson, supra,* 142 U.S.App.D.C. at 52–53, 439 F.2d at 563–64; *Alvarez–Sanchez, supra,* 975 F.2d at 1400–01. The court has already acknowledged in the case of an adult suspect that a delay hovering around six hours between arrest and a first interview by police detectives is "an extraordinarily long delay." *Byrd, supra,* 618 A.2d at 597–98, 599. Unlike *Bond, supra,* 614 A.2d at 901, where the court concluded that the suspect's speedy arraignment rights were not violated by 36 hours' delay in presentment, there is nothing to indicate that appellant's conduct caused delays. Nor has the government shown that there was any reason for the unreasonable delay. Because the record indicates that appellant was held so that he could be interviewed by the police, the trial judge, who found that the delay was unreasonable, erred in failing to suppress appellant's confession. *See Alvarez–Sanchez, supra,* 975 F.2d at 1405–06; *Wilson, supra,* 838 F.2d at 1086–87; *see also* D.C.Code § 4–140, *supra* note 7; *cf. Frazier, supra,* 136 U.S.App.D.C. at 186, 182–83, 419 F.2d at 1167, 1163–64 (where defendant voluntarily waived his *Miranda* rights within an hour and a half of arrest, his confession was admissible even if police transfer was for purpose of interrogation).

Under the circumstances of the instant case, the unreasonable delay presents an insurmountable problem. Beyond the six-hour safe harbor, *Mallory–McNabb* continues to apply. *See Robinson, supra,* 142 U.S.App.D.C. at 53–54, 439 F.2d at 563–64; 18 U.S.C. § 3501(b) & (c) (implying that trial judge has discretion to use delay as the sole grounds for inadmissibility if the unexcused delay is greater than six hours); *Alvarez–Sanchez, supra,* 975 F.2d at 1400–01, 1403, 1405; *Perez, supra,* 733 F.2d at 1035; *see also Halbert, supra,* 436 F.2d at 1234; *cf. Gaines, supra* note 15, 555 F.2d at 623–24 (exclusion within discretion of trial judge considering factors such as "the deterrent purpose of the exclusionary rule"). To the extent that this court has relied on an interpretation of the decision in *Halbert, supra,* 436 F.2d 1226, to conclude that delay alone is no longer a ground for suppressing a confession because of unreasonable prearraignment delay, *see Bond, supra,* 614 A.2d at 900 (18 U.S.C. § 3501 was designed to ameliorate effect of *Mallory* decision so delay alone would not be grounds for rejecting admissibility of confession) (citing *Halbert, supra,* 436 F.2d at 1231), this is a misinterpretation. *See Alvarez–Sanchez, supra,* 975 F.2d at 1403

---

**15.** Contrary to the majority's assertion that it can find no limiting principle in the concurring opinion, *see* majority opinion at 11, the concurrence applies the limiting principle that has been recognized by the courts to underlie the statute: the deterrence of law enforcement abuses. *See Alvarez–Sanchez, supra,* 975 F.2d at 1403 ("a confession may be suppressed in order to serve the prophylactic purpose of discouraging officers from unnecessarily delaying arraignments"); *United States v. Gaines,* 555 F.2d 618, 623–24 (7th Cir.1977) (trial judge has discretion to exclude statements made after more than six hours in custody after considering factors including "the deterrent purpose of the exclusionary rule"); *see also Wilson, supra,* 838 F.2d at 1087 (one purpose of § 3501 was "to supervise the processing of defendants from as early a point in the criminal process as practicable.... [and not to] give officers a free hand to postpone any arraignment until a confession is obtained"). The court must consider the motive for the delay and how the delay was used. *See, e.g., Marrero, supra* note 11, 450 F.2d at 376; *Wilson, supra,* 838 F.2d at 1086, 1087.

("[d]iscretion remains in the trial judge, under subsection 3501(b), to exclude confessions as involuntary solely because of delay in arraignment, during which a confession is given, that exceeds six hours") (quoting *Halbert, supra,* 436 F.2d at 1234); *see also id.* at 1400–01 ("in light of the provisions of § 3501(c), there must be circumstances in which delay in arraignment will require suppression of a confession regardless of the voluntariness of the confession"); *id.* at 1401 ("Section 3501(c), by implication, provides that unreasonable prearraignment delay can provide the sole basis for a finding of involuntariness, if the delay exceeds six hours") (quoting *Manuel, supra,* 706 F.2d at 913; note 6, *supra.*

Even under the *Bond* waiver approach, 614 A.2d at 899, adopted in *Byrd, supra,* 618 A.2d at 598, the majority errs in concluding that the trial judge could properly find that appellant's waiver was voluntary.[16] The trial judge and the majority purport to focus on the circumstances of the delay insofar as they bore on appellant's state of mind to waive his *Miranda* rights. They state that appellant "did not show any apparent effects of being intimidated or threatened or being scared," and that "there is no evidence of any fear, threats, coercion or force, physical or psychological...." Majority opinion at 984, 986. Of course, one can hardly expect such indications to be revealed in police-controlled videotapes, and third-degree physical torture does not exhaust the inquiry. *See Marrero, supra* note 11, 450 F.2d at 376 (cannot use delay to employ "condemned psychologically coercive ... practices"), *quoted in Bond, supra,* 614 A.2d at 901. It is unclear on what basis the trial judge and the majority decide to accord no weight to circumstances which are directly relevant to a determination of voluntariness in waiving constitutional rights.

The majority, having viewed the videotape, and deferring to the trial judge's evaluation of the detectives' testimony, concludes that the trial judge's findings are supported by the record. Majority opinion at 986. Thus, the majority states that "the record of what transpired during the eight hours is sketchy, and we certainly agree with the judge that the detective's explanation of 'large amounts of paperwork' could not justify essentially ignoring appellant for eight hours or more in a position of obviously increasing physical discomfort." [17] Majority opinion at 985. *See Frazier, supra,* 136 U.S.App.D.C. at 187–88, 419 F.2d at 1168–69 (government has burden to show waiver was voluntary and intelligent) (citation omitted); *Poole, supra,* 161 U.S.App.D.C. at 295, 495 F.2d at 121. In other words, the record produced by the government shows that appellant was held incommunicado while handcuffed to a desk for up to eight hours.

But, while the majority concludes that sitting for eight hours handcuffed to a desk had become increasingly uncomfortable for appellant, it accords no apparent weight to this circumstance. Majority opinion at 985–986. Neither is the majority apparently concerned with the effect of the police conduct on appellant or with his perception of it. The majority acknowledges that from appellant's perspective the police "were playing 'mind games'" by leaving him alone for eight hours and by "letting him worry about the cooperation of his codefendants." *Id.* at 986. Yet, appellant's perception appears to be of no concern to the majority in examining the totality of circumstances despite the fact that

---

**16.** *See Byrd, supra,* 618 A.2d at 599 (voluntariness is a legal question decided *de novo* by this court); *Hawthorne v. United States,* 504 A.2d 580, 586 (D.C.1986) (trial court's "findings of fact on the issue of voluntariness" reviewed for substantial evidence on the record, but legal issue of whether confession was voluntary is reviewed *de novo*), *cert. denied,* 479 U.S. 992, 107 S.Ct. 593, 93 L.Ed.2d 594 (1986); *cf. Wilson, supra,* 838 F.2d at 1086. *But see Bond, supra,* 614 A.2d at 898 (substantial support in the record for trial judge's finding that confession was

"voluntary in fact"); *Catlett v. United States,* 545 A.2d 1202, 1208 (D.C.1988) ("[t]he trial court's conclusion that a statement was voluntary will be upheld when it is substantially supported by the evidence"), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989).

**17.** The government's witnesses at the suppression hearing were unclear about the details of appellant's eight-hour confinement at the homicide division.

the record produced by the government includes no denial that the police were aware of the effect of isolation as a psychological pressure on appellant. *Cf. Alexander v. United States*, 428 A.2d 42, 50–51 (D.C.1981); *In re J.M., supra*, 619 A.2d at 502–03. The majority also appears to give no weight to the fact that before advising appellant of his rights, the detective told appellant that he and his friends had been implicated in a homicide. The detective also told appellant he was taking statements from all who were involved and asked if he would like to make a statement.[18] *See Alexander, supra*, 428 A.2d at 45, 50–51 (defendant was told that police knew what had happened and that she was going to jail).

A defendant's perception of his surroundings and what is happening as well as the objective view of police tactical conduct are part of the totality of circumstances that must be addressed in any waiver analysis. *Miranda v. Arizona, supra*, 384 U.S. at 445, 449–56, 467, 86 S.Ct. at 1612–13, 1614–18, 1624 (dangers of psychologically manipulative techniques, such as isolating the suspect, which were used to obtain confessions); *Gayden v. United States*, 492 A.2d 868, 871, 872 & n. 9, 873 (D.C. 1985) (coercion arising from "fresh face" psychological tactic employed by police combined with direct accusation of defendant's guilt to produce confession), *on appeal*, 584 A.2d 578 (D.C.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991); *Alexander, supra*, 428 A.2d at 45, 51 (partial waiver of *Miranda* rights, followed by full waiver after rights "not scrupulously honored," coercion).

The problem in the instant case extends, therefore, beyond the fact that the pre-waiver delay was far in excess of the six hour safe harbor under § 3501(c). According to the record produced by the government and the facts found by the trial judge and construed by the majority, a youth of sixteen years is held in detention after arrest for eleven hours. He is held incommunicado in the homicide office where he is handcuffed to a desk for up to eight hours and is in increasing physical discomfort. He thinks that the police are playing mind games with him.[19] The first person to speak to him after approximately eight hours in custody is a detective, who informs him that he has been implicated in a murder and robberies. It is impressed upon appellant by the detective that the police are trying to get statements from everyone who was involved in the crimes. Appellant then purports to waive his rights voluntarily and knowingly, *see Johnson v. Zerbst*, 304 U.S. 458, 465, 469, 58 S.Ct. 1019, 1023, 1025, 82 L.Ed. 1461 (1938), and proceeds to implicate himself in the crimes. The detective's first statements to appellant, when combined with appellant's prolonged isolation and physical discomfort, could reasonably have caused appellant, who was a minor, to conclude that he should cooperate with the police because the police had or would obtain statements from others that would implicate him. These are circumstances that, in view of the unreasonable pre-waiver delay, should cause the court to conclude that the government failed to meet its heavy burden to show that "the exacting standards for waiver are met." *Frazier, supra*, 136 U.S.App.D.C. at 185–86, 419 F.2d at 1166–67. *See Bond, supra*, 614 A.2d at 901 ("government's reliance on the waiver of *Miranda* rights becomes weaker as the period of pre-arraignment detention increases") (quoting *Wilson, supra*, 838 F.2d at 1087).

Accordingly, I respectfully dissent from the majority's conclusion that the trial judge did not err in denying appellant's motion to suppress his statement. However, in view of the government's overwhelming other evidence against appellant, the

---

**18.** The detective stated that "[m]y intentions were to make him aware of the fact that I would be attempting to get statements from everyone involved."

**19.** *See Alexander, supra*, 428 A.2d at 51, 45 & n. 9.

error was harmless beyond a reasonable doubt and I concur in affirming the judgment of conviction.[20]

**20.** *See Arizona v. Fulminante,* 499 U.S. 279, ——, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991); *Ruffin v. United States,* 524 A.2d 685, 703 (D.C. 1987), *cert. denied,* 486 U.S. 1057, 108 S.Ct. 2827, 100 L.Ed.2d 927 (1988). Based on the victims' descriptions of their attackers, and the car in which they were riding, the car in which appellant was riding was stopped by the police. At a show up, one of the victims identified appellant and his three companions as the robbers. A search of the car led to the recovery of the coats taken from the victims and a pair of earrings belonging to one of the victims was found in appellant's jacket pocket.